24482

The STATE, Respondent v. Johnny Miller BRISBON, Appellant.

(474 S.E. (2d) 433)

Supreme Court

*Assistant Appellate Defender Robert M. Pachak, of South Carolina Office of Appellate Defense,* Columbia, *for Appellant.*

*Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Charles F. Reid,* Columbia; *Solicitor Donald V. Myers,* Lexington, *for Respondent.*

Heard May 7, 1996.

Decided Aug. 19, 1996.

TOAL, Acting Chief Justice:

Johnny Miller Brisbon appeals his conviction for murder. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Bertha Mae Grooms ("Victim") was last seen alive the weekend of June 12, 1992. Brisbon had known Victim for approximately twenty-five years and had dated her for a number of years. Brisbon came by Victim's home and picked her up on Friday, June 12, 1992, as was his custom on Friday evenings. She did not return.

On July 15, 1992, hunters came across Victim's skeletal remains in a wooded area of Lee County. Two days later, an autopsy was performed, which revealed that wounds had been inflicted to Victim's neck and abdomen. The pathologist testified the injuries may have resulted from a sharp weapon, such as a knife or axe, and that the cause of death was the penetrating wounds to the body.

On August 4, 1996, officers searched a storage building at the cemetery where Brisbon worked. They found a blood-stained sofa. Two days later, officers returned to the storage building and discovered an axe. There was blood on the axe head and the axe handle. Brisbon's bloody palm print was on the handle of the axe.

Blood tests were performed on the blood found on the sofa and on the axe. Because of the condition of the blood samples, D.N.A. analysis could not be performed; however, it was possible to conduct Polymerase Chain Reaction testing. This test revealed that the type of blood found on the sofa and the axe excluded 91 percent of the North American black population. Victim was among the 9 percent of the black population that had the same type of blood as that found on the sofa and the axe.

Brisbon testified in his own defense. He declared he had picked up Victim on Friday, June 12th at approximately 5:00 p.m. At 11:00 p.m., he took Victim to a diner on Bluff Road. Brisbon further testified that at the diner, Victim said she saw her stepson, with whom she decided to go home. In reply, Victim's stepson testified he was not at the diner on June 12th. Furthermore, the owner of the diner testified he did not see Victim there that day.

The jury convicted Brisbon of the murder of Victim. Brisbon appeals, arguing that the trial court erred in:

1. refusing to grant a directed verdict where the State failed to present any substantial evidence that Brisbon com-

mitted the murder in Lexington County, and in refusing to instruct the jury with Brisbon's proposed charge on venue;

2. refusing to grant a directed verdict where the State failed to present any substantial evidence that Brisbon murdered Victim;

3. refusing to grant a mistrial for instructing the jury that in determining credibility, they could take into account whether defendant was forthright or hesitant;

4. refusing to grant a mistrial where the solicitor demonstrated with an axe in his closing argument before the jury.

## LAW/ANALYSIS

### A. *Venue: Directed Verdict and Proposed Jury Charge*

Brisbon raises two arguments relating to venue. He argues the trial court erred in not granting a directed verdict where the State failed to present any substantial evidence that Brisbon committed the murder in Lexington County. Further, he contends the court erred in refusing to instruct the jury with the proposed charge that venue must be proved beyond a reasonable doubt. Because both arguments fundamentally raise the issue of the degree of proof necessary to establish venue, we will address them together.

Although an accused has a right to be tried in the county in which the offense is alleged to have been committed, this right is not jurisdictional. *State v. Evans*, 307 S.C. 477, 415 S.E. (2d) 816 (1992). Venue in a criminal case need not be affirmatively proved if there is sufficient evidence from which it can be inferred. *State v. Owens*, 293 S.E. 161, 359 S.E. (2d) 275, *cert. denied*, 484 U.S. 982, 108 S.Ct. 496, 98 L.Ed. (2d) 495 (1987); *State v. Horne*, 282 S.C. 444, 319 S.E. (2d) 703 (1984); *State v. Vareen*, 223 S.C. 34, 74 S.E. (2d) 223 (1953). Evidence of venue, though slight, is sufficient in the absence of conflicting evidence and may be proved by circumstantial as well as direct evidence. *State v. Wharton*, 263 S.C. 437, 211 S.E. (2d) 237 (1975); *State v. Henderson*, 285 S.C. 320, 329 S.E. (2d) 448 (Ct. App. 1985). Where acts essential to the offense are committed in different counties, the accused may be tried in either county. *State v. McLeod*, 303 S.C. 420, 401 S.E. (2d) 175 (1991); *Wray v. State*, 288 S.C. 474, 343 S.E. (2d) 617 (1986); *State v. Allen*, 266 S.C. 468, 224 S.E. (2d) 881 (1976); *State v. Gasque*, 241 S.C. 316, 128 S.E. (2d) 154 (1962).

S.C. Code Ann. § 17-21-20 (1976) specifically covers the issue of venue where a person causes injury in one county and death occurs in another:

> When any person shall be struck, wounded, poisoned or otherwise injured in one county and dies thereof in another any inquisition or indictment thereon found by jurors of either county shall be as good and effectual in law as if the stroke, wound, poisoning or other injury had been committed and done in the county in which the party shall die. And the person guilty of such striking, wounding, poisoning or other injury and every accessory thereto, either before or after the fact, shall be tried in the county in which such indictment shall be found and, if convicted, punished in the same mode, manner and form as if the deceased had suffered such striking, wounding, poisoning or other injury and death in the county in which such indictment shall be found.

In *Owens*, we determined that where there were signs of a struggle at the victim's Horry County residence at which he was last seen, and where ransom money was demanded and delivered in Horry County, there was sufficient evidence to establish venue in Horry County. *Owens*, 293 S.C. 161, 359 S.E. (2d) 275. In *McLeod*, this Court held that venue was proper in either Colleton or Beaufort counties. The victim's clothing and decomposed body were found in Beaufort County. However, she was last seen alive in Colleton County, witnesses saw her there being forced into a car by the defendant, and there were signs of a struggle at her Colleton County residence. *McLeod*, 303 S.C. 420, 401 S.E. (2d) 175.

Under the low threshold discussed above, there exists sufficient evidence in the present case to find that venue was proper in Lexington County. Brisbon worked in Lexington County; blood that could potentially be Victim's was found on a sofa at Brisbon's workplace; an axe on which were found blood stains and Brisbon's palm print was likewise found at the same location. Thus, despite the fact that Victim's body was found in Lee County, evidence critical to the commission of the offense was connected to Lexington, thereby rendering it an appropriate venue. Accordingly, the trial court did not err in refusing to grant a directed verdict to

Brisbon on the issue of the State's failure to establish Lexington as a proper venue.

The above recitation of law also makes clear that Brisbon's second argument relating to venue—that it must be proved beyond a reasonable doubt—lacks validity. This Court has written:

> The rule of our decisions, which requires allegation and proof of the place of death in homicide cases and which was the common law, developed before the advent of paved roads and motor vehicles. . . . [W]here the record discloses no possibility of prejudice to appellant in his defense, justice requires liberality in the application of the rule. Otherwise, it is easy to conceive of facts under which a murderer could successfully conceal the place of death of his victim with reference to a county line, and escape conviction. Proof of the place of death would be impossible and, therefore, conviction impossible and the guilty escape.

*State v. Gregg*, 230 S.C. 222, 228, 95 S.E. (2d) 255, 259 (1956). Further,

> The purpose of requiring the State to allege and prove the place of the assault and the place of death is (1) to show jurisdiction of the court and (2) to fully inform the defendant of the nature and cause of the accusation. In the application of the foregoing rule, however, it has been held that, where the jurisdiction of the court is established in the county where the fatal assault was committed, the requirement that the place of death must be proved will be applied with liberality when it clearly appears that no prejudice will result to the defendant in his defense.

*State v. Bostick*, 243 S.C. 14, 17, 131 S.E. (2d) 841, 842 (1963). Accordingly, we reject Brisbon's argument that the State is required to prove beyond a reasonable doubt the location of death.

### B. *Directed Verdict: Commission of the Crime*

Brisbon asserts the court erred in refusing to grant a directed verdict where the State failed to present any substantial evidence that Brisbon murdered Victim.

We disagree. In determining whether to send the case to the jury on circumstantial evidence,

> the judge is concerned with the existence or nonexistence of evidence, not its weight; and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced.

*State v. Edwards*, 298 S.C. 272, 275, 379 S.E. (2d) 888, 889 (quoting *State v. Littlejohn*, 228 S.C. 324, 89 S.E. (2d) 924 (1955)), *cert. denied*, 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed. (2d) 196 (1989).

The following are the major pieces of evidence presented by the State linking Brisbon to the murder of Victim:

a. he and Victim had been dating for a number of years;
b. it was his practice to pick up Victim on Fridays, and she would return home on Sundays;
c. he picked her up on Friday, June 12, 1992, after which she was not seen;
d. at Brisbon's workplace, a sofa was found on which were blood stains indicating a blood type consistent with only nine percent of the North American black population (Victim had this type of blood.);
e. blood was on an axe found at Brisbon's workplace (The blood, which was found on the axe head and handle, again matched Victim's blood type.);
f. Brisbon's bloody palm print was on the handle of the same axe.

From the above evidence, Brisbon's guilt may be fairly and logically deduced; the evidence went beyond merely raising a suspicion of the accused's guilt. *See id.*

### C. *Misstatement in Jury Charge*

We next consider Brisbon's argument that the trial court erred in refusing to grant a mistrial when it instructed the jury that in determining credibility, it

should take into account whether the defendant was forthright or hesitant. The following excerpt contains the disputed charge in context:

You are also the judges and the sole judges, the only judges of the credibility or the believability of the witnesses who have testified in this case, and in passing upon their credibility you may take into consideration many things such as—these are by way of example—the appearance and manner of the witness on the stand commonly referred to sometimes as the demeanor of the witness. *Was the defendant forthright or hesitant?* Was the witness's testimony consistent or did it contain discrepancies? Was the ability of.the witness to know—What was the ability of the witness to know the facts about which he or she testified? Did the witness have a cause or a reason to be biased or prejudiced in favor of the testimony that he or she gave? And was the testimony of the witness corroborated or made stronger by other testimony or was it made weaker by other testimony and evidence?

(Emphasis added.) Brisbon contends that the reference to "defendant" focused attention on him and his credibility as a witness to the exclusion of the other witnesses. The record is clear that the trial court mistakenly substituted the word "defendant" for "witness." After Brisbon's objection, the court immediately offered a curative instruction, but the defendant refused, arguing that only the granting of a mistrial could correct the error.

It is well established that a trial judge must refrain from any comment which tends to indicate his opinion as to the weight or sufficiency of the evidence, the credibility of witnesses, the guilt of an accused, or any fact in controversy. *Sosebee v. Leeke*, 293 S.C. 531, 362 S.E. (2d) 22 (1987); *State v. Smith*, 288 S.C. 329, 342 S.E. (2d) 600 (1986). *Sosebee* and *Smith*, however, are easily distinguishable. In *Smith*, during the jury instruction, the judge, after describing what the State had to prove in order for evidence of a breathalyzer exam to be admissible, commented, "You have heard such evidence." *Smith*, 288 S.C. at 331, 342 S.E. (2d) at 601. In *Sosebee*, after petitioner's counsel objected that certain testi-

mony was only designed to buttress the victim's testimony, the judge declared:

> No sir, it's not necessarily to buttress it in a situation such as this. You have suggested that her story is patently incredible, but within a few moments after reporting back home she told that story. It isn't something she made up between then and now, as you suggested.

*Sosebee,* 293 S.C. at 533, 362 S.E. (2d) at 23. On appeal, the Court found this statement to be prejudicial.

The comment in the present case in no way compares to the prejudicial comments made by the trial courts in the above cases. The statement here was simply a "slip of the tongue"; it was not an affirmative comment upon the evidence. Moreover, there was arguably no prejudice here, because the jury charge was not stating that the defendant was untruthful. The question, "Was the defendant forthright or hesitant," could just as easily be interpreted as emphasizing the defendant's forthrightness, as it does his hesitancy.

### D. *Prosecutor's Axe Demonstration*

Brisbon argues that the court erred in not granting his motion for a mistrial when the solicitor in closing arguments carried out a prejudicial demonstration using the axe that was the alleged murder weapon. We disagree.

The decision to grant or deny a mistrial is within the discretion of the trial judge. The decision of the trial court will not be disturbed absent an abuse of discretion which results in prejudice to the defendant. *State v. Dawkins,* 297 S.C. 386, 377 S.E. (2d) 298 (1989). The test of granting a new trial for alleged improper closing argument of counsel is whether the defendant was prejudiced to the extent that he was denied a fair trial. *State v. Durden,* 264 S.C. 86, 212 S.E. (2d) 587 (1975). We do not find that the trial court abused its discretion in this case. The defendant was not prejudiced to the extent that he was denied a fair trial. Accordingly, we reject Brisbon's argument that the trial court erred in allowing this demonstration.

### CONCLUSION

Based on the foregoing, Brisbon's conviction is AFFIRMED.

MOORE, WALLER, and BURNETT, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.