720 S.E.2d 522

The STATE, Respondent,

v.

Robert Troy TAYLOR, Appellant.

No. 4920.

Court of Appeals of South Carolina.

Heard March 10, 2011.
Decided Dec. 21, 2011.
Rehearing Denied Jan. 27, 2012.

194

Jeremy Adam Thompson, of Columbia, for Appellant.

Assistant Deputy Attorney General Salley W. Elliott, of Columbia, for Respondent.

LOCKEMY, J.

Robert Troy Taylor appeals his convictions and sentence of life without parole for criminal sexual conduct with a minor in the second degree and kidnapping. Taylor argues the trial court erred in (1) granting the State's Batson motion, (2)

admitting evidence of Taylor's prior conviction for criminal sexual conduct with a minor, (3) denying his motion for a directed verdict, and (4) sentencing him to life without parole. We affirm.

## FACTS

Taylor was the pastor of the church Victim attended in Murrells Inlet, South Carolina. In November 1998, when Victim was 11, Taylor organized a camping trip with Victim and a group of six or seven boys from the church. Taylor took the boys to an area "just outside [the city of] Andrews" on Highway 521 and the group hiked about a mile into the woods to a campsite "right next to the Black River." Taylor and the boys set up a tent and a large tarp, made a fire, and cooked food. At approximately 11 p.m., the boys retired to their sleeping bags under the tarp. Later that night, Taylor woke Victim, placed his hand over Victim's mouth, and carried him to the tent. Once inside the tent, Taylor removed Victim's clothes and forced Victim to touch his penis and anus. Taylor also touched Victim's penis and anus. Next, Taylor raped Victim. After raping Victim, Taylor instructed Victim not to reveal the rape to anyone and returned Victim to his sleeping bag. Taylor slept next to Victim and held him throughout the course of the night.

In August 1999, Taylor and a few other adults from the church organized a trip to the beach. After leaving the beach, the group returned to the church to use the showers. Once all the showers were occupied, Taylor asked Victim and another boy if they would like to use the showers at his house. Victim and the other boy accompanied Taylor to his home near the church. While Victim was showering, Taylor entered the bathroom, removed his clothes, and entered the shower. Taylor forced Victim to touch his penis and Taylor touched Victim's penis and anus. Next, Taylor raped Victim. After raping Victim, Taylor instructed Victim not to divulge the rape to anyone. Taylor drove Victim and the other boy back to the church.

Approximately five years after the 1999 rape, Victim, then 17, told his parents about the two rapes. Taylor was indicted for second degree criminal sexual conduct with a minor in

Georgetown County for the 1999 rape. Taylor pled guilty and was sentenced to eight years' imprisonment suspended upon the service of five years and three years' probation. In May 2006, Taylor was indicted for second degree criminal sexual conduct with a minor and kidnapping for the 1998 rape. The State served Taylor with notice of its intent to seek a sentence of life without parole pursuant to section 17–25–45 of the South Carolina Code (Supp.2010). Taylor was convicted on both counts and the trial court sentenced him to life without parole. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

### I. Batson

Taylor argues the trial court's finding that his strike of Juror 146 was racially motivated is clearly erroneous. We disagree.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the State from striking a venire[ ]person on the basis of race." *State v. Hicks,* 330 S.C. 207, 211, 499 S.E.2d 209, 211 (1998) (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The trial court must hold a *Batson* hearing when members of a cognizable racial group are struck and the opposing party requests a hearing. *State v. Haigler,* 334 S.C. 623, 629, 515 S.E.2d 88, 90 (1999). First, the proponent of the strike must present a race or gender neutral explanation for the challenged strike. *Id.* In response the opponent of the strike must show the race or gender neutral explanation given by the proponent was mere pretext. *Id.* at 629, 515 S.E.2d at 91. Pretext is generally established by showing similarly situated members of another race or gender who were seated on the jury. *Id.*

■■■ "Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record." *State v. Edwards*, 384 S.C. 504, 509, 682 S.E.2d 820, 822 (2009). The trial court's finding of purposeful discrimination rests on its evaluation of demeanor and credibility. *Id.* at 509, 682 S.E.2d at 823. "Often the demeanor of the challenged attorney will be the best and only evidence of discrimination, and an 'evaluation of the [attorney's] mind lies peculiarly within a trial [court's] province.'" *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). This court will give the trial court's finding great deference on appeal and review the trial court's ruling with a clearly erroneous standard. *Edwards*, 384 S.C. at 509, 682 S.E.2d at 822.

Here, the State moved to quash the jury after Taylor used ten strikes to strike white jurors. In regard to Juror 146, Taylor noted Juror 146 was an administrative assistant and offered the following explanation:

> I have found over the years that the more education jurors have the less likely they are to adopt argument—they usually come with their own idea or agenda. Over the years, I[have] learned to shy away from jurors with higher education. And, in addition to that, I also know her husband personally and we just do [not] get along.[1]

In response, the State pointed to Juror 138, an accountant, as a similarly situated African–American juror with equal or more education than Juror 146. The trial court inquired regarding Taylor's reasoning for concluding Juror 146 had a high level of education. Taylor responded: "Well, she [is] an [a]dministrative [a]ssistant. Inasmuch as she would be in management that she would have got there by promotion or her qualification[s]. Certainly she would have met the qualification to be in management. But she is in management."

Before ruling on the State's Batson motion, the trial court allowed Taylor to revisit his explanation for striking Juror 146.

---

1. Taylor has not argued on appeal that defense counsel's poor personal relationship with Juror 146's husband was a proper race neutral explanation for the strike. Accordingly, we are precluded from addressing the issue. *See State v. Carriker*, 269 S.C. 553, 555, 238 S.E.2d 678, 678 (1977) (finding issue unpreserved because it was not raised by the appellant).

Taylor explained that in striking Juror 146 based upon her education level, in essence, he was striking her based upon her position in management. According to Taylor, jurors with management level employment "come with an agenda" and are "constantly manifesting their discretion as it relates to how you handle people." Ultimately, the trial court found Taylor offered a race neutral explanation for the other nine strikes he used. However, the trial court found Taylor's strike of Juror 146 violated *Batson* because he accepted Juror 138 with more formal education and a higher level employment position. A jury was re-struck and Juror 146 was seated on the jury.

We are concerned with the potential for prejudice with Juror 146 seated on the re-struck jury. However, based on our standard of review, we are unable to find anything clearly erroneous in the trial court's determination Taylor failed to offer a race neutral explanation for striking Juror 146. Taylor explained he struck Juror 146 based on her education and/or employment level. However, Taylor seated Juror 138, an African–American, with a similar education and/or employment level. Although employment is a race neutral reason for striking a juror, the State demonstrated Taylor's explanation was mere pretext by pointing to a similarly situated African–American juror whom Taylor seated. *See State v. Ford,* 334 S.C. 59, 65, 512 S.E.2d 500, 504 (1999) (noting "it is legitimate to strike potential jurors because of their employment"). Considering the record as a whole, we see nothing clearly erroneous in the trial court's determination and defer to the trial court's finding of purposeful discrimination.

## II. Rules 403 and 404(b), SCRE

■ Taylor contends the trial court erred in allowing the admission of Victim's testimony regarding the 1999 rape as evidence of a common scheme or plan because they are not sufficiently similar. Assuming the 1999 rape is evidence of a common scheme or plan, Taylor maintains its probative value was substantially outweighed by the danger of unfair prejudice. We disagree.

■ "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262,

265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

South Carolina Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, evidence of other crimes, wrongs or acts may be "admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE. Evidence of other crimes, wrongs, or acts is admissible to show a common scheme or plan when a "close degree of similarity [exists] between the crime charged and the prior bad act." *State v. Gaines*, 380 S.C. 23, 30, 667 S.E.2d 728, 731 (2008). Thus, the trial court must examine "the similarities and dissimilarities between the crime charged and the bad act evidence"; if the "similarities outweigh the dissimilarities, the bad act evidence is admissible" as evidence of a common scheme or plan. *State v. Wallace*, 384 S.C. 428, 433, 683 S.E.2d 275, 277–78 (2009). "A close degree of similarity establishes the required connection between the two acts and no further 'connection' must be shown for admissibility." *Id.* at 434, 683 S.E.2d at 278. In sexual abuse cases, the trial court should consider all relevant factors in determining the degree of similarity, including "(1) the age of the victims when the abuse occurred; (2) the relationship between the victims and the perpetrator; (3) the location where the abuse occurred; (4) the use of coercion or threats; and (5) the manner of the occurrence, for example, the type of sexual battery." *Id.* at 433–34, 683 S.E.2d at 278.

Here, the trial court weighed the similarities between the two crimes and determined they fell within the common scheme or plan exception under Rule 404(b), SCRE. In making this determination, the trial court relied on *State v. Edwards* for the proposition that "[t]he common scheme or plan exception is commonly applied in cases of sexual assault where conduct both before and after the acts charged is held admissible to show 'continued illicit intercourse between the same parties.'" 373 S.C. 230, 235, 644 S.E.2d 66, 69 (Ct.App. 2007) (citing *State v. Mathis*, 359 S.C. 450, 463, 597 S.E.2d 872, 879 (Ct.App.2004)). In our view, the concept of continued

illicit intercourse between the same parties in sexual abuse cases is another way of stating the common scheme or plan exception to Rule 404(b). See *State v. Clasby*, 385 S.C. 148, 159, 682 S.E.2d 892, 898 (2009) (concluding evidence of the defendant's continued illicit sexual abuse "prior to the indicted offenses constitutes the archetypal 'common scheme or plan' evidence"); *State v. Tutton*, 354 S.C. 319, 328, 580 S.E.2d 186, 191 (Ct.App.2003) ("Where there is a pattern of continuous misconduct, as commonly found in sex crimes, that pattern supplies the necessary connection to support the existence of a plan. Presumably, this is so because the same evidence that establishes the continuous nature of the assaults will generally suffice to prove the existence of the common scheme or plan as well."). Therefore, we proceed with the analysis used in *Wallace*.

Turning to the *Wallace* factors, the 1998 and 1999 rapes occurred nine months apart when Victim was 11 to 12 years old. Taylor was the Victim's pastor. While the physical locations where the rapes occurred are not identical, both rapes occurred in connection with church organized outings. After both rapes Taylor threatened Victim to prevent him from revealing the rapes. Finally, the type of sexual battery in 1998 is identical to the sexual battery in 1999. In sum, with the exception of the physical location of the rapes, all the *Wallace* factors are highly similar. The similarities between the 1998 rape and the 1999 rape outweigh the dissimilarities, and we conclude a very close degree of similarity exists between the rapes. Accordingly, Taylor's argument is without merit.

Even if evidence of "other crimes, wrongs, or acts" is admissible as evidence of a common scheme or plan, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Clasby*, 385 S.C. at 155–56, 682 S.E.2d at 896; Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). We are cognizant of the prejudicial effect of admitting evidence of other crimes, wrongs, or acts based upon the degree of similarity with the charged crime. *See*

*Wallace,* 384 S.C. at 436, 683 S.E.2d at 279 (noting "the mere presence of similarity only serves to enhance the potential for prejudice") (Pleicones, J. dissenting). However, here, both rapes were committed in an identical manner under almost identical circumstances on the same victim. Therefore, we conclude the trial court properly found the probative value of the 1999 rape substantially outweighed the danger of unfair prejudice to Taylor. *See State v. Mathis,* 359 S.C. 450, 464, 597 S.E.2d 872, 879–80 (Ct.App.2004) (finding the probative value of evidence of earlier assaults on the victim substantially outweighed the danger of unfair prejudice where all the earlier assaults were attempted in the same manner and under similar circumstances).

### III. Venue

 Taylor argues the trial court erred in denying his motion for a directed verdict because the State failed to prove the 1998 rape occurred in Williamsburg County. We disagree.

 Generally, a criminal defendant "has a right to be tried in the county in which the offense is alleged to have been committed." *State v. Brisbon,* 323 S.C. 324, 327, 474 S.E.2d 433, 435 (1996). Thus, a defendant "is entitled to a directed verdict when the State fails to present evidence that the offense was committed in the county alleged in the indictment." *State v. Williams,* 321 S.C. 327, 333, 468 S.E.2d 626, 630 (1996). However, this is a low evidentiary threshold. *Brisbon,* 323 S.C. at 328, 474 S.E.2d at 436. The State is not required to affirmatively prove venue, it is sufficient if evidence exists from which venue can be inferred. *Id.* at 327, 474 S.E.2d at 435. In the absence of conflicting evidence, even slight evidence of venue is sufficient. *Id.*

Here, Victim testified the campsite was "just outside of Andrews" on Highway 521, about a "mile in the woods," "right next to the Black River." Victim's mother also testified she was told the campsite was on the "other side of Andrews." Victim explained he first reported the rape to the Georgetown County authorities who were uncertain whether the campsite was in Georgetown County or Williamsburg County. The Georgetown County authorities referred Victim to Sergeant Laura Rogers, a victims advocate for the Williamsburg County

Sheriff's Office. Rogers reviewed the statement Victim gave to the Georgetown County authorities and took additional oral and written statements from Victim. Rogers explained Victim's statements contained landmarks which she used to personally locate the campsite in Williamsburg County. We find the State presented sufficient evidence to establish the 1998 rape occurred in Williamsburg County. Thus, the trial court properly denied Taylor's motion for a directed verdict.

### IV. Life Without Parole

■■■ Taylor contends the trial court erred in sentencing him to life without parole (LWOP). Taylor argues the 1999 rape is inextricably connected to the 1998 rape because it was admitted as evidence of a common scheme or plan. Therefore, Taylor maintains the 1998 rape and the 1999 rape should be considered one offense pursuant to section 17–25–50 of the South Carolina Code (2003). However, we believe this issue is not preserved for our review.

At trial, Taylor moved to quash the State's notice of its intent to seek a sentence of life without parole. Taylor argued his conviction for the 1998 rape did not support a sentence of life without parole because it occurred prior to his predicate most serious offense, the 1999 rape.[2] The trial court denied Taylor's motion. After trial, Taylor filed a motion to reconsider. At the hearing on his motion to reconsider, one of Taylor's contentions was the 1998 and 1999 rapes were so closely connected in time that they should be treated as one offense pursuant to section 17–25–50 of the South Carolina

---

2. In 1982, the Legislature passed section 17–25–45 of the South Carolina Code (1982), adding a provision that stated "a conviction shall be considered a second conviction only if the date of the commission of the second crime occurred subsequent to the imposition of the sentence for the first offense." *Bryant v. State*, 384 S.C. 525, 530, 683 S.E.2d 280, 282–83 (2009). In 1995, the Legislature amended section 17–25–45 to abandon the requirement that a second offense occur after the imposition of a sentence for the prior offense. *Id.* at 530–31, 683 S.E.2d at 283. In 2006, the Legislature again amended section 17–25–45(F) to clarify that the sentence for the predicate most serious offense does not have to be served before a sentence of life without parole can be imposed for a subsequent offense. *Id.* at 531, 683 S.E.2d at 283. Here, Taylor makes his argument under the 1982 statute. Since the incident here occurred in 1998, the 1982 statute is not relevant, and the 1995 amended statute is applicable.

Code (2003). In response, the State submitted the 1998 and 1999 rapes were not committed as part of a continuous course of conduct or crime spree. The trial court inquired whether its ruling admitting evidence of the 1999 rape as evidence of a common scheme or plan required it to also find the 1998 and 1999 rapes were one continuous event pursuant to section 17–25–50. The State maintained the rapes were not so closely connected in time that they should be considered one offense. Taylor then reiterated his argument a LWOP sentence was improper in his case because the predicate most serious offense occurred after the 1998 rape. The trial court denied Taylor's motion to reconsider. In its order the trial court noted Taylor argued his LWOP sentence was improper because evidence of the 1999 rape was admitted as evidence of a common scheme or plan.[3] The trial court found no authority existed supporting the proposition and denied the motion.

We find the issue of whether the crimes should have been considered one serious offense due to their close temporal proximity and inextricable connection is unpreserved because our review of the record reveals Taylor never raised it during trial. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (stating an issue must be *"raised to* and ruled upon by the trial judge to be preserved for appellate review") (emphasis added); *State v. Carriker*, 269 S.C. 553, 555, 238 S.E.2d 678, 678 (1977) (finding issue unpreserved because it was not raised by the appellant). Taylor appears to approach the issue at the post-trial motion hearing.[4] Even so, this is insufficient to preserve the issue for our review because it was not raised at trial. *See Dixon v. Dixon*, 362 S.C. 388, 399, 608 S.E.2d 849, 854 (2005) (holding that an issue first raised in a post-trial motion is not preserved for appellate review); *see also Wilder*, 330 S.C. at 77, 497 S.E.2d at 734 (holding post-

---

3. After a review of the record, it appears only the trial court raised the issue of whether a finding of a common scheme or plan under *Lyle* would require a finding that the 1998 and 1999 rapes were one continuous event for purposes of sentencing.

4. Taylor contends, in a persuasive argument, that the definition of "inextricably connected" and "continuous course of conduct," as applied to these facts, entitles him to lenity or other relief in the application of section 17–25–50. However, he did not raise this issue at trial; thus, we are bound by the laws of preservation.

trial motions are not necessary to preserve issues that have already been ruled on; they are used to preserve those that have been raised to the trial court but not yet ruled on by it). The balance of the argument on the issue at the post-trial motion hearing was raised by the trial court, which is also insufficient to preserve the issue for our review. *Duncan v. Hampton Cnty. School Dist. No. 2*, 335 S.C. 535, 545, 517 S.E.2d 449, 454 (Ct.App.1999) (finding issue unpreserved where it was raised *sua sponte* by the trial court and not by the respondent). Furthermore, on appeal, Taylor argues "[t]he [trial court] improperly sentenced [Taylor] to life without parole because the substantive facts of the predicate offense were admitted as common scheme or plan evidence." However, at trial and during argument on his motion to reconsider, Taylor repeatedly maintained the trial court erred in sentencing him to life without parole because the predicate most serious offense, the 1999 rape, occurred after the 1998 rape. Taylor cannot argue one ground for error at trial and a different ground for error on appeal. *See State v. Haselden*, 353 S.C. 190, 196, 577 S.E.2d 445, 448 (2003). Accordingly, this issue is not preserved for our review.

## CONCLUSION

For the foregoing reasons, Taylor's convictions and sentence of life without parole are

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.