762 S.E.2d 744

**The STATE, Appellant,**

v.

**Wayne McCOMBS, Respondent.**

**Appellate Case No. 2012–209947.**

**No. 5265.**

Court of Appeals of South Carolina.

Heard Feb. 4, 2014.

Decided Aug. 20, 2014.

Rehearing Denied Sept. 18, 2014.

94

Attorney General Alan Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia; Solicitor David Michael Pascoe, Jr., of Orangeburg; and Assistant Solicitor Russell D. Hilton, of Ridgeville, for Appellant.

Andrew John Savage, III, and Jonathan Scott Bischoff, II, both of Savage Law Firm, of Charleston, for Respondent.

WILLIAMS, J.

In this criminal appeal, the State argues the circuit court erred in finding evidence of Wayne McCombs' prior bad act was not admissible in his trial for committing a lewd act on a minor. We reverse and remand.

**FACTS/PROCEDURAL BACKGROUND**

McCombs was indicted for committing a lewd act on a minor. The case was called for trial on March 5, 2012. During a pretrial hearing to address the State's motion in limine to admit evidence of a prior bad act, the State presented testimony from a prior victim ("Jessica"), the detective who investigated the prior bad act, and the victim whom McCombs was on trial for molesting ("Victim").

Jessica was the first witness called to testify at the pre-trial hearing. She testified that in 2001, when she was eleven years old, she went with her friend Joshua, McCombs' grandson, to McCombs' house for a pool party. Jessica stated she had not met McCombs prior to the party. According to Jessica, she did not initially get into the water, but McCombs told her if she did not get in the pool, she could not be at his house. Jessica testified that in hindsight she was sure he was joking, but she interpreted it differently on the day of the incident. According to Jessica, once she was in the pool, McCombs guided her around in the water by her waist and stuck his finger under her two-piece bathing suit and felt her vagina. Jessica stated McCombs talked to her while he was touching her but not about the touching. Jessica recalled that McCombs had been drinking at the time of the incident. Jessica left the pool, and McCombs followed her into the kitchen and sat her on his lap. Jessica subsequently went into the computer room, and McCombs followed her. Jessica testified McCombs stuck his hands down her pants from

behind and touched her vagina in the computer room. On cross-examination, Jessica testified McCombs also stuck his fingers in her mouth. Jessica reported the incident, and McCombs was charged with committing a lewd act on a minor and assault with intent to commit criminal sexual conduct (ACSC). McCombs pled guilty to assault and battery of a high and aggravated nature (ABHAN) in July 2002.

Detective Miller, the investigator assigned to Jessica's case, was also called to testify at the pretrial hearing. Detective Miller stated that after the incident, Jessica reported McCombs groped her in the pool, sucked on her fingers in the kitchen, and attempted to fondle her vagina in the computer room. According to Detective Miller, Jessica did not report that McCombs stuck his hands under her bathing suit in the pool. He testified that if she had reported that McCombs stuck his hand under her bathing suit in the pool, he would have charged McCombs with an additional count of ACSC.

Victim also testified at the pretrial hearing. She testified that on August 1, 2009, when she was nine years old, she was at McCombs' house for her grandmother's birthday party. Victim stated that she lived in the same neighborhood and knew McCombs. Victim testified she was in the pool with McCombs when he put his hand under her two-piece bathing suit and touched her vagina. According to Victim, McCombs was talking to her about school during the incident. Victim stated she tried to reach a concrete area on the side of the pool as McCombs was pushing harder on her vagina. She testified she did not know if the touching was purposeful, but she thought it was. Victim did not remember if McCombs was drinking at the time of the incident.

■ At the hearing, the State moved to admit the prior bad act involving Jessica based on the common scheme or plan exception to the exclusion of prior bad act evidence under Rule 404(b), SCRE. The circuit court found the evidence of the prior bad act was inadmissible, ruling:

[Because] I have found that the evidence, if admissible, would be relevant, ... I must make a determination of whether it would be under 404(b), whether it would be admissible as a common scheme or plan, in which the State has indicated that is what it intends to proceed under. The

court must look at whether the admission of the evidence of the 2001 incident is logically relevant to the crime that we are here for today. The charges are substantially the same. As the State pointed out several times[,] the victims were both female.... [T]he alleged incidents occurred at the defendant's home in the pool. The similarities at that point become unclear and it becomes confusing based upon the testimony that was given by [Jessica] and then the detective that has testified today. I agree with the State that the analysis and purpose of the forensic interview is to fully articulate and develop the story and the allegations, and so I can understand why there may be some discrepancy between what the victim testified to, or indicated to the detective and what was disclosed. I am concerned that there, as the analysis unfolds one of the factors from [*Wallace*[1]] is the use of coercion or threats. [The victim] said there was no threats given in the pool. [Jessica] said that he forced her and threatened her to get into the pool. The relationship between the victim and the perpetrator is the same. The perpetrator, the victims in both cases were friends. They were invited to swim over there at his pool. [Jessica] did testify that the defendant was drinking. The victim ... testified that she was not sure, and did not know if he had been drinking. I must weigh the similarities against the dissimilarities and if the similarities outweigh the dissimilarities the Bad Act evidence is admissible, if the similarities outweigh the dissimilarities. Then I must do a 403 balancing test if I find that the proof is clear and convincing. Based upon my, as I stated previously, I do feel that the dissimilarities outweigh the similarities as testified to. I do find that even assuming that the similarities would outweigh the dissimilarities the remoteness in time under the 403 balancing test makes it more prejudicial than probative. I am denying the request for the 404(b) analysis....

The State appeals pursuant to *State v. Henry*, 313 S.C. 106, 432 S.E.2d 489 (Ct.App.1993).[2]

---

1. *State v. Wallace*, 384 S.C. 428, 683 S.E.2d 275 (2009).

2. Pursuant to *State v. Henry*, a pretrial order suppressing evidence that significantly impairs the prosecution of a criminal case is directly appealable. 313 S.C. at 107–08, 432 S.E.2d at 490.

## STANDARD OF REVIEW

In criminal cases, an appellate court sits to review only errors of law, and it is bound by the circuit court's factual findings unless they are clearly erroneous. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). "The admission or exclusion of evidence is left to the sound discretion of the [circuit court], whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Black,* 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). "An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Jennings,* 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011).

## LAW/ANALYSIS

The State argues the circuit court erred in finding McCombs' prior bad act was inadmissible because the similarities outweigh the dissimilarities. We agree.

To admit evidence of prior bad acts, the circuit court must first determine whether the proffered evidence is relevant. *State v. Clasby,* 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009). If the circuit court finds the evidence is relevant, the court must then determine whether the bad act evidence is admissible under Rule 404(b) of the South Carolina Rules of Evidence. *Id.* Rule 404(b) precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged, except to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the perpetrator. *See* Rule 404(b), SCRE.

To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing.... When considering whether there is clear and convincing evidence of other bad acts, an appellate court is bound by the [circuit] court's factual findings unless they are clearly erroneous.

*Clasby,* 385 S.C. at 155, 682 S.E.2d at 895 (citations and internal quotation marks omitted). "If the [circuit court]

concludes there is clear and convincing evidence that the defendant committed the uncharged acts, he or she must determine whether the prior acts fall within the common scheme or plan exception." *Id.* at 155, 682 S.E.2d at 896.

"Evidence of other crimes, wrongs, or acts is admissible to show a common scheme or plan when a 'close degree of similarity [exists] between the crime charged and the prior bad act.' " *State v. Taylor,* 399 S.C. 51, 59, 731 S.E.2d 596, 601 (Ct.App.2012) (quoting *State v. Gaines,* 380 S.C. 23, 30, 667 S.E.2d 728, 731 (2008)). "When determining whether evidence is admissible as [a] common scheme or plan [under Rule 404(b) ], the [circuit] court must analyze the similarities and dissimilarities between the crime charged and the bad act evidence to determine whether there is a close degree of similarity." *Wallace,* 384 S.C. at 433, 683 S.E.2d at 277–78. "A close degree of similarity exists when the 'similarities outweigh the dissimilarities.' " *State v. Scott,* 405 S.C. 489, 500, 748 S.E.2d 236, 242 (Ct.App.2013) (quoting *Wallace,* 384 S.C. at 433, 683 S.E.2d at 278). When determining whether a close degree of similarity exists, the circuit court "should consider all relevant factors." *Taylor,* 399 S.C. at 59, 731 S.E.2d at 601.

In *Wallace,* our supreme court listed several factors for the circuit court to consider when determining whether there is a close degree of similarity between the prior bad act and the charged crime in cases involving the sexual abuse of a minor:

(1) the age of the victims when the abuse occurred; (2) the relationship between the victims and the perpetrator; (3) the location where the abuse occurred; (4) the use of coercion or threats; and (5) the manner of the occurrence, for example, the type of sexual battery.

384 S.C. at 433–34, 683 S.E.2d at 278.

In *State v. Hubner,* 362 S.C. 572, 585, 608 S.E.2d 463, 469 (Ct.App.2005), *rev'd,* 384 S.C. 436, 683 S.E.2d 279 (2009), the court of appeals reversed the circuit court's decision to admit prior bad act evidence after determining the similarities were insufficient to support the admission of the evidence. In *Hubner,* the court of appeals considered the following similarities: (1) the perpetrator inappropriately touched both girls and (2) the girls were the same age when they were abused.

*Id.* The court of appeals also considered the following dissimilarities: (1) the location of the abuse; (2) the relationship between the victim and the perpetrator; (3) the use of coercion or threats; and (4) the type of sexual battery. *Id.* at 585–86, 608 S.E.2d at 469–70. Additionally, the acts in *Hubner* occurred fourteen years apart from each other. *Id.* at 584, 608 S.E.2d at 469. In reversing the circuit court, the court of appeals held the events occurred "under different circumstances, at different times, in different places, and in different ways." *Id.* at 586, 608 S.E.2d at 470 (quoting *State v. Berry*, 332 S.C. 214, 219, 503 S.E.2d 770, 773 (Ct.App.1998)). However, our supreme court reversed the court of appeals. *See State v. Hubner*, 384 S.C. 436, 683 S.E.2d 279 (2009). Citing to *Wallace*, our supreme court found the court of appeals erred in reversing the circuit court's admission of the prior bad act evidence. *Id.* at 437, 384 S.C. 525, 683 S.E.2d 280.

Based on Jessica's testimony, we find the following similarities exist between the prior bad act and the charged crime: (1) the female victims were approximately the same age; (2) the abuse occurred in the pool at the same residence; (3) the abuse occurred during a party; (4) both victims were neighborhood children; (5) both victims were touched underneath their bathing suits; (6) the touching occurred underwater; and (7) McCombs continued to talk to the victims while the abuse occurred.

Detective Miller testified that Jessica reported McCombs groped her in the pool, sucked on her fingers in the kitchen, and attempted to fondle her vagina in the computer room. Although Detective Miller's testimony differs from Jessica's testimony, we find his testimony still presents the following significant similarities: (1) both victims were young females; (2) both victims were neighborhood children; (3) both victims were abused at the same residence; (4) both victims were groped in the swimming pool; (5) both victims were attending a pool party at McCombs' house; and (6) both victims were inappropriately touched in the vaginal area. Based on Jessica's and Detective Miller's testimonies, we find the events occurred under similar circumstances, in similar places, and in a similar manner.

100

■ In contrast, the circuit court considered two dissimilarities: (1) McCombs' use of threats or coercion and (2) McCombs' consumption of alcohol prior to inappropriately touching the girls. Jessica testified that she initially felt coerced into getting into the pool, but she later testified that she was "sure he was joking." Victim did not report the use of any threats or coercion. Regarding McCombs' consumption of alcohol, Jessica testified McCombs was drinking during the commission of the prior bad act, but Victim could not remember if McCombs had been drinking prior to inappropriately touching her. We find these dissimilarities to be insubstantial. Upon review of the factors and in light of our supreme court's holdings in *Wallace* and *Hubner*, we find the circuit court erred in finding the dissimilarities outweighed the similarities. We find a close degree of similarity exists between the prior bad act and the charged crime, and the evidence of the prior bad act should have been admitted under Rule 404(b).

After ruling the evidence should not have been admitted under Rule 404(b), the circuit court found the admission of the prior bad act evidence was more prejudicial than probative under Rule 403 of the South Carolina Rules of Evidence due to the dissimilarities and the "remoteness in time" between the acts. We disagree.

■ "Once bad act evidence is found admissible under Rule 404(b), the [circuit] court must then conduct the prejudice analysis required by Rule 403, SCRE." *Wallace*, 384 S.C. at 435, 683 S.E.2d at 278. Under Rule 403, "relevant[ ] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "The probative value of evidence falling within one of the Rule 404(b) exceptions must substantially outweigh the danger of unfair prejudice to the defendant." *Wallace*, 384 S.C. at 435, 683 S.E.2d at 278–79. " 'Unfair prejudice means an undue tendency to suggest a decision on an improper basis.' " *Scott*, 405 S.C. at 505–06, 748 S.E.2d at 245 (quoting *State v. Spears*, 403 S.C. 247, 253, 742 S.E.2d 878, 881 (Ct.App. 2013)).

The circuit court does not necessarily err when it permits testimony about a bad act occurring many years prior to the charged crime. *Id.* at 504, 748 S.E.2d at 244; *State v. Tutton*, 354 S.C. 319, 332 n. 5, 580 S.E.2d 186, 193 n. 5 (Ct.App.2003) ("Remoteness in time, however, is not dispositive."); *State v. Blanton*, 316 S.C. 31, 33, 446 S.E.2d 438, 440 (Ct.App.1994) ("That the alleged acts perpetrated against the two witnesses occurred some seven to eight years prior to the alleged molestation of [the victim], is not alone dispositive."). In fact, evidence of prior bad acts that occurred many years before the charged crime is often admissible to prove a common scheme or plan. *Scott*, 405 S.C. at 504, 748 S.E.2d at 244; *see Blanton*, 316 S.C. at 33, 446 S.E.2d at 440 (holding the circuit court properly admitted testimony regarding a bad act that occurred seven to eight years before the charged crime).

In the instant case, the probative value of Jessica's testimony outweighs the danger of unfair prejudice. As previously discussed, the similarities between the charged crime and the prior bad act outweigh the dissimilarities. Additionally, the temporal remoteness between the two acts does not bar the admission of the evidence of the prior bad. Although the incidents occurred eight years apart, we believe the probative value of the prior bad act outweighs the danger of unfair prejudice. Accordingly, we find the circuit court erred in denying the admission of McCombs' prior bad act.

## CONCLUSION

Based on the foregoing, we find the circuit court erred in denying the admission of evidence of McCombs' prior bad act. Accordingly, we reverse and remand for further proceedings consistent with this decision.

**REVERSED AND REMANDED.**

KONDUROS, and LOCKEMY JJ., concur.