613 S.E.2d 814

**The STATE, Respondent,**

v.

**Kwasi Roosevelt TUFFOUR, Appellant.**

**No. 3989.**

Court of Appeals of South Carolina.

Heard March 9, 2005.

Decided May 9, 2005.

Rehearing Denied June 22, 2005.

498

Katherine Carruth Link, of West Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Christina T. Adams, of Anderson, for Respondent.

KITTREDGE, J.

Kwasi Roosevelt Tuffour was convicted and sentenced for trafficking in crack cocaine, 100 to 200 grams. Tuffour appeals claiming error in the admission at trial of prior bad act evidence, tape recordings, and impeachment evidence. We find the trial court erred in the admission of prior, unrelated alleged drug transactions under the common scheme or plan exception to *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), and Rule 404(b), SCRE. Based on the admission of this forbidden propensity evidence, we reverse and remand for a new trial.

## *FACTS*

Anthony Rice was arrested by the Anderson County Sheriff's Office in December of 2001 and charged with conspiracy to traffic in crack cocaine. Rice cooperated with law enforcement as an "undercover operative," and, in an effort to "work off" his charge, he agreed "to set Kwasi [Tuffour] up."

On December 18, 2001, Rice's cell phone was "wired," and he called Tuffour, presumably to arrange a purchase of five ounces of crack cocaine. The conversation was recorded by law enforcement, but only Rice's voice is audible on the tape.[1] Following the conversation, Rice was "wired," and he drove to the Anderson County town of Belton. He stopped in a known drug area referred to as the "tree." Several officers with the sheriff's office conducted surveillance in the area.

Rice remained at the "tree" for approximately three hours and engaged in numerous conversations, none of which were recorded. The vehicle that Tuffour was driving[2] passed by

---

1. It appears the inability to hear both Rice and Tuffour may have been the result of improper installation of the recording equipment by law enforcement.

2. There was evidence Tuffour was driving someone else's car.

the area, and Rice returned to his vehicle and followed Tuffour. The vehicles stopped at a nearby apartment complex. Rice exited his vehicle and approached the vehicle occupied by Tuffour and another person, later identified as a juvenile. The conversation which ensued was recorded, but the recording quality is poor. When Rice gave the prearranged signal to law enforcement, officers immediately approached the vehicle. Tuffour and the other occupant were taken from the vehicle. Crack cocaine was found in the vehicle, and both Tuffour and the juvenile occupant were charged.

Based on the December 18th incident, Tuffour was indicted for trafficking in crack cocaine, 100 to 200 grams. The State succeeded in admitting, over Tuffour's objection, testimony from Rice that he had purchased crack cocaine—typically five ounces at a time—from Tuffour on numerous prior occasions. The State contended that this evidence concerning alleged prior drug sales was proper under the common scheme or plan exception to *Lyle* and Rule 404(b), SCRE. The State asserted that Tuffour would not have sold five ounces of crack cocaine to Rice without the prior relationship and transactions. The trial court additionally admitted evidence in connection with the tape recordings as well as a redacted version of Tuffour's criminal record to impeach his testimony. Tuffour was convicted and sentenced, and he now challenges these evidentiary rulings on appeal.

### STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only. We are bound by the trial court's factual findings unless they are clearly erroneous." *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citation omitted). The trial court's ruling admitting evidence, including prior bad act evidence, is reviewed under an abuse of discretion standard. *Id.* at 6, 545 S.E.2d at 829.

### DISCUSSION

Tuffour argues the trial court erred in admitting evidence that Rice, on several prior occasions, had purchased crack cocaine from him in unrelated transactions. Tuffour

specifically asserts the admission of this evidence patently violates the rule in *Lyle* and Rule 404(b), SCRE. We agree.

■ Perhaps no tenet of evidence law in the context of "prior bad acts" is more firmly established than the principle that propensity or character evidence is inadmissible to prove the specific crime charged:

> That contention is grounded upon the familiar and salutary general rule, universally recognized and firmly established in all English-speaking countries, that evidence of other distinct crimes committed by the accused may not be adduced merely to raise an inference or to corroborate the prosecution's theory of the defendant's guilt of the particular crime charged ... [p]roof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence. It ... 'raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it.'

*Lyle*, 125 S.C. at 415–16, 118 S.E. at 807 (internal citations omitted).

■ This rule of evidence is universally recognized in American jurisprudence and is necessary to ensure that the presumption of innocence is not relegated to an empty phrase:

> It is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other offenses at other times, even though they are of the same nature as the one charged in the indictment, is inadmissible for the purpose of showing the commission of the particular crime charged. This rule has been recognized and applied in cases involving prosecutions for the sale of narcotics, so that as a general rule, subject to the exceptions ..., where the state charges a particular sale of narcotics, it is not proper to admit proof of other sales, for the purpose of establishing the particular sale charged.

A. Petry, *Admissibility in Prosecution for Illegal Sale of Narcotics of Evidence of Other Sales*, 93 A.L.R.2d 1097, § 3 (1964).

■ There are exceptions to the general rule of inadmissibility:

> [U]nder *Lyle,* evidence of these other bad acts **may** be admitted to prove the defendant's guilt if that evidence establishes: (1) motive; (2) intent; (3) absence of mistake or accident; (4) identity; or (5) **a common scheme or plan involving other crimes so closely related to the one charged that proof of one tends to prove** the other.

*State v. Barroso,* 328 S.C. 268, 271, 493 S.E.2d 854, 855 (1997) (emphasis in original).

■ In the present case, the trial court relied only on the common scheme or plan exception.[3] When this exception is invoked by the State, it is important to recognize that a close degree of similarity between the prior bad acts and the crime charged, by itself, does not satisfy *Lyle.* Indeed, the mere presence of similarity only serves to enhance the potential for prejudice. *State v. Gore,* 283 S.C. 118, 121, 322 S.E.2d 12, 13 (1984).[4] The foundation for admissibility transcends mere similarity, for the admission of such evidence under the common scheme or plan exception requires a connection between the extraneous crimes and the crime charged so that proof of the former tends to prove the latter. Succinctly stated, prior bad act evidence must be relevant to prove the alleged crime. *See State v. Timmons,* 327 S.C. 48, 52, 488 S.E.2d 323, 325 (1997) ("A common scheme or plan concerns more than the commission of two similar crimes; some connection between the crimes is necessary."); *State v. Hough,* 325 S.C. 88, 95, 480 S.E.2d 77, 80 (1997) ("The common scheme or plan [exception] concerns more than the commission of two similar crimes;

---

3. When a prior bad act is not the subject of a conviction, it must be established by clear and convincing evidence. *State v. Weaverling,* 337 S.C. 460, 468, 523 S.E.2d 787, 791 (Ct.App.1999). No issue is presented to us concerning this threshold determination.

4. Similarly, in the area of impeachment under Rule 609, SCRE, courts are disinclined to admit prior similar convictions due to the unmistakable prejudice that would likely result. *See Green v. State,* 338 S.C. 428, 433, 527 S.E.2d 98, 100–01 (2000) (noting that because prior convictions for the same or similar crimes are highly prejudicial, they should be admitted sparingly); *State v. Colf,* 337 S.C. 622, 627, 525 S.E.2d 246, 248 (2000) (including "the similarity between the past crime and the charged crime" as a factor weighing against admissibility).

504

some connection between the crimes is necessary."); *State v. Parker*, 315 S.C. 230, 234, 433 S.E.2d 831, 833 (1993) (noting that "a general similarity ... [is] insufficient to support the common scheme or plan exception"); *State v. Bell*, 302 S.C. 18, 27–28, 393 S.E.2d 364, 369 (1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990) (noting that "evidence of other crimes is never admissible unless necessary to establish a material fact or element of the crime charged"); *State v. Johnson*, 293 S.C. 321, 324, 360 S.E.2d 317, 319 (1987) ("Evidence of other crimes is never admissible unless necessary to establish a material fact or element of the crime charged."); *State v. Stokes*, 279 S.C. 191, 193, 304 S.E.2d 814, 815 (1983) ("The 'common scheme or plan' exception requires more than mere commission of two similar crimes by the same person. There must be some connection between the crimes. If there is any doubt as to the connection between the acts, the evidence should not be admitted."); *State v. Wallace*, 364 S.C. 130, 611 S.E.2d 332 (Ct.App.2005) (finding the trial court erred in admitting evidence of alleged prior bad acts merely because the prior acts were similar to the crime charged; holding instead that the trial court should look beyond mere close similarity to consider the connection between extraneous bad act and the crime charged); *State v. Carter*, 323 S.C. 465, 467, 476 S.E.2d 916, 917–18 (Ct.App.1996) (noting that "[i]n the prosecution of one crime, proof of another direct substantive crime is never admissible unless there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue"; and further noting that "evidence of prior bad acts must be relevant to prove the alleged crime"); *State v. Campbell*, 317 S.C. 449, 451, 454 S.E.2d 899, 901 (Ct.App.1994) (holding that "the evidence of prior bad acts must be relevant to prove the alleged crime").

The appellate courts of this state have unwaveringly adhered to the rule of exclusion of prior bad act evidence to show criminal propensity or that the defendant is a bad person unworthy of the presumption of innocence. **It bears reminder that *Lyle* and Rule 404(b) set forth a rule of exclusion, not inclusion.** The common scheme or plan exception is perhaps the most difficult exception to apply, for in the context of other exceptions to the rule (motive and identi-

ty, for example), the relevance (or lack of relevance) of the prior bad act is more easily discerned.[5] When assessing the purported relevance of prior bad act evidence to the crime charged, we find the analytical framework advanced in *Lyle* helpful:

Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the Courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. *Hence, if the Court does not clearly perceive the connection between*

5. There are situations where the relevance between the prior bad act evidence and the crime charged is clearly perceived, often when the crime charged contains an element that is directly linked to the bad act evidence. In *State v. Wilson*, the court held that "evidence of a prior drug transaction is relevant on the issue of intent when the defendant has been charged with possession of a controlled substance with intent to distribute." 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001). In *State v. Raffaldt*, the defendant was indicted for trafficking in cocaine. 318 S.C. 110, 112, 456 S.E.2d 390, 391 (1995). The trial court allowed bad act evidence of "marijuana dealing" *during* the cocaine conspiracy. The supreme court affirmed the admission of this bad act evidence, finding "that the method of marijuana dealing between Raffaldt and [a co-conspirator] was quite similar to the cocaine conspiracy." *Id.* at 114, 456 S.E.2d at 392. In *State v. Moultrie*, the defendant was convicted of possession of marijuana with intent to distribute, and this court affirmed the admission of Moultrie's "involvement . . . in the drug trade," noting that "the challenged [bad act] testimony was clearly relevant to the question of whether Moultrie possessed drugs with the intent to distribute them on the night of his arrest." 316 S.C. 547, 554, 451 S.E.2d 34, 38–39 (Ct.App.1994). The nature of the charges—and the related bad act evidence—in *Wilson*, *Raffaldt* and *Moultrie* present circumstances far removed from those before us today, for Tuffour's alleged single act of drug trafficking requires no showing of intent and is otherwise unrelated to his purported prior dealings with Rice.

*the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.*

*Lyle,* 125 S.C. at 416–17, 118 S.E. at 807 (emphasis added).

We find instructive the case of *State v. Campbell,* 317 S.C. 449, 454 S.E.2d 899 (Ct.App.1994). Campbell was charged with and convicted of distribution of crack cocaine. A police informant, Timothy Bellamy, conducted a controlled purchase of crack cocaine from Campbell, resulting in the charged offense. Over Campbell's objection, the trial court allowed Bellamy to testify—pursuant to the common scheme or plan exception—that he had purchased crack cocaine from Campbell on prior occasions. This court reversed, stating:

Here, the testimony is of prior drug sales utilizing a similar sales technique. However, this is not enough to satisfy *Lyle.* Campbell was tried on a single charge of distribution. The methodology of prior sales is not relevant to prove this transaction. Several police who were present at the transaction and arrest testified. The confidential informant also testified. By introducing the prior bad acts, the State was not trying to prove a common scheme but to convince the jury that because Campbell sold crack cocaine in the past, he was selling crack cocaine on this occasion. This is precisely the type of inference that *Lyle* prohibits.

*Id.* at 451, 454 S.E.2d at 901.

We reached the same result under strikingly similar facts in *State v. Carter,* 323 S.C. 465, 476 S.E.2d 916 (Ct.App.1996). Gary Stamps was arrested for possession of crack cocaine on January 14, 1994, after leaving the home of the defendant, Charles Carter. Stamps claimed he purchased the drugs from Carter. Stamps agreed to cooperate with police and, four days later on January 18th, he made a controlled purchase from Carter. At Carter's trial for the January 18th incident, the trial court permitted the State to elicit testimony from Stamps concerning the January 14th purchase. On appeal, this court reversed, firmly rejecting the State's reliance on the common scheme or plan exception. The *Carter* court held "[t]here is no legal connection between these two purchases sufficient to come within the framework of the common scheme or plan exception." *Id.* at 468, 476 S.E.2d at 918.

Tuffour was charged with a single charge of trafficking. His alleged prior drug dealings have no relevance whatsoever to the charged offense. The State's argument that Tuffour would not have sold five ounces of crack cocaine to Rice in December without the "prior relationship" and transactions is specious, for the alleged first sale from Tuffour to Rice in August supposedly involved five ounces of crack cocaine. The crime here stands on its own, and "[t]he methodology of prior sales is not relevant to prove this transaction." [6] *Campbell,* 317 S.C. at 451, 454 S.E.2d at 901. The State here "was not trying to prove a common scheme but to convince the jury that because [Tuffour] sold crack cocaine in the past, he was selling crack cocaine on this occasion. This is precisely the type of inference that *Lyle* prohibits." *Id.*

Applying these principles and precedent to the present case, we perceive no legal connection or relevance between the alleged prior drug sales and the crime charged. The prejudice in this testimony is manifest. We reverse and remand for a new trial.[7]

Because we reverse and remand this matter for a new trial due to the improper admission of Tuffour's alleged prior bad acts, we need not address the remaining evidentiary exceptions raised by Tuffour. *See, e.g., Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining that the appellate court need not address remaining issues when disposition of prior issues is dispositive); *Whiteside v. Cherokee County School Dist. No. One,* 311 S.C. 335, 340–41, 428 S.E.2d 886, 889 (1993) (noting that appellate court need not address remaining issues when disposition of prior issue is dispositive); *State v. Rivers,* 273 S.C. 75, 79, 254 S.E.2d 299, 301 (1979) (declining to address additional errors raised by appellant in light of the court's decision to reverse and remand the case on a challenged evidentiary ruling).

---

**6.** Rice testified in the *in camera* hearing that he "started out" by purchasing five ounces of crack cocaine from Tuffour; that he "just bought individually [from Tuffour] whenever [he] needed it;" that the purchases were not connected, for there was never an agreement to "buy more."

**7.** The State makes no claim that the erroneous admission of this propensity evidence was harmless.

## CONCLUSION

Accordingly, we reverse Tuffour's conviction and remand for a new trial.

**REVERSED AND REMANDED.**

HEARN, C.J., and WILLIAMS, J., concur.