683 S.E.2d 275

**The STATE, Petitioner,**

v.

**Karl WALLACE, Respondent.**

No. 26703.

Supreme Court of South Carolina.

Heard March 18, 2008.

Decided Aug. 17, 2009.

Rehearing Denied Oct. 15, 2009.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, of Columbia; and Solicitor Robert M. Ariail, of Greenville, for petitioner.

C. Rauch Wise, of Greenwood; and Everett P. Godfrey, Jr., of Godfrey Law Firm, of Greenville, for respondent.

Acting Justice BURNETT.

Respondent Karl Wallace was convicted of criminal sexual conduct with a minor, second degree, for the sexual abuse of his stepdaughter (Victim). On appeal, the Court of Appeals reversed, holding the admission of evidence that respondent abused Victim's older sister (Sister) was improperly admitted.[1] We reverse.

## FACTS

Victim testified the abuse began when she was twelve years old. When she was in seventh grade, respondent would periodically call her into his bedroom and tell her to go into the adjoining bathroom and take off her clothes. Victim's mother and Sister worked nights and were not at home when this happened. Respondent would touch Victim's breasts and would warn her, "Don't tell anyone 'cause they're not going to believe you anyway." This conduct continued during the time Victim was in the seventh and eighth grade.

One night when Victim was in ninth grade, respondent told her to sit on his bed. Victim's mother was not home and Sister had moved out of the house. Respondent forced Victim back on the bed, pulled off her pants and underwear, forced open her legs and "pushed his hands up [her] private parts." When Victim screamed, respondent put a pillow over her face and threatened to hit her if she did not stop. Victim's younger brother came to the door and respondent told Victim to go into the bathroom and dress. After the brother left, respondent forced Victim back onto the bed and took off her pants again but only looked at her. He then let her get back up and get dressed, and she left the room. Victim telephoned Sister who came to the house but respondent would not let Sister come inside.

The next day, Sister visited Victim at school to find out why Victim had called. Sister asked if respondent had "messed with her" and Victim told Sister what respondent had done. Sister reported the abuse and a police report was filed.

At trial, after an in camera hearing, the trial judge allowed Sister to testify that she was also sexually abused by respon-

---

1. *State v. Wallace*, 364 S.C. 130, 611 S.E.2d 332 (Ct.App.2005).

dent from the time she was in seventh grade until she moved out of the house after graduating high school. Sister testified that respondent would rub her back and sometimes put his hands up under her shirt and touch her breasts. After a while, he started touching her "private area" and performing oral sex on her. This would occur sporadically in respondent's bedroom or in Sister's bedroom when her mother was not at home. Sister testified respondent "would always tell me, you know, at the end, you know, 'You better not tell anyone.... "They're not going to believe [you] so don't tell anyone." ' " The trial judge found this evidence admissible under Rule 404(b), SCRE, as evidence of common scheme or plan.

## ISSUE

Did the Court of Appeals err in finding Sister's testimony inadmissible as evidence of common scheme or plan?

## DISCUSSION

### *Rule 404(b)*

Evidence of other bad acts is not admissible to prove the defendant's guilt except to show motive, identity, existence of a common scheme or plan, absence of mistake or accident, or intent. Rule 404(b), SCRE; *see also State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).[2] The Court of Appeals found it was error to admit Sister's testimony as evidence of common scheme or plan because "the trial court did not address any connection between the two crimes." Rather than viewing the similarity of the two events as establishing the required connection, the Court of Appeals found some further link was necessary.[3]

---

**2.** Bad act evidence that is not subject to a conviction must be shown by clear and convincing evidence and is reviewed under an "any evidence" standard on appeal. *State v. Wilson*, 345 S.C. 1, 545 S.E.2d 827 (2001). Here, there is no challenge to the proof of the bad act.

**3.** In support, the Court of Appeals points to *Lyle, supra*, in which this Court allowed evidence of a "similar crime" that occurred on the same date in the same town (Aiken), but disallowed evidence of "similar crimes" that occurred on other dates in other locations (Georgia). The *Lyle* court observed that there was no connection to show the Georgia crimes were "practically 'a continuous transaction,' " 125 S.C. at 427,

■■ The process of analyzing bad act evidence begins with Rule 401, SCRE.[4] Pursuant to Rule 401, the trial court must determine whether the evidence is relevant. Upon determining the evidence is relevant, the trial court must then determine whether the bad act evidence fits within an exception of Rule 404(b) as interpreted by our jurisprudence.

■ Rule 404(b) allows the admission of evidence of a common scheme or plan. Such evidence is relevant because proof of one is strong proof of the other. When determining whether evidence is admissible as common scheme or plan, the trial court must analyze the similarities and dissimilarities between the crime charged and the bad act evidence to determine whether there is a close degree of similarity. *State v. Parker*, 315 S.C. 230, 433 S.E.2d 831 (1993). When the similarities outweigh the dissimilarities, the bad act evidence is admissible under Rule 404(b).

■■ Although not a complete list, in this type of case, the trial court should consider the following factors when determining whether there is a close degree of similarity between the bad act and the crime charged: (1) the age of the victims when the abuse occurred; (2) the relationship between the victims and the perpetrator; (3) the location where the abuse occurred; (4) the use of coercion or threats; and (5) the manner of the occurrence, for example, the type of sexual

---

118 S.E. at 811, and therefore the evidence was inadmissible. The Court of Appeals read this holding in *Lyle* to mean a similarity in the acts is not enough without some further connection.

A careful reading of *Lyle* does not support the Court of Appeals' conclusion. The crime charged in *Lyle* was uttering a forged check. The *Lyle* court allowed the Aiken bad act evidence not only because it had occurred on the same date, but because it had a close degree of similarity to the particulars of the crime charged—the forged checks were issued using the same name and the same address. 118 S.E. at 807–808. The evidence that was *not* allowed was evidence of simply uttering other forged checks with no particulars in common with the events giving rise to the charge for which the defendant was tried. In other words, the commission of acts that fall into the same criminal definition is not sufficient. The acts must bear some factual similarity to constitute a connection between them.

4. Rule 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

battery. *See State v. Hallman,* 298 S.C. 172, 379 S.E.2d 115 (1989) (evidence admissible as common scheme or plan where all victims were foster children of similar age and the types of sexual batteries were similar); *State v. McClellan,* 283 S.C. 389, 323 S.E.2d 772 (1984) (evidence admissible as common scheme or plan where both victims were defendant's daughters, were the same age at time of the initial attack, and defendant gave same explanation for his actions). We emphasize that these factors are set out merely for guidance and that other factors may be relevant in weighing the similarities and the dissimilarities between the crime charged and the bad act evidence.

■ A close degree of similarity establishes the required connection between the two acts and no further "connection" must be shown for admissibility.[5] Here, the similarities between the acts include petitioner's relationship to the victims (his stepdaughters), abuse beginning at about the same age, abuse occurring in the family home when the mother was absent, and an admonishment not to tell because no one would believe it. In sum, there are similarities in the class of victim, timing, place, and warning that outweigh any dissimilarity. We find the Court of Appeals erred in ruling that Sister's testimony was improperly admitted under Rule 404(b).

### Redaction

At the in camera hearing, Sister testified that digital penetration and oral sex eventually progressed to intercourse. The trial court ruled that in order to avoid unfair prejudice to respondent, any testimony regarding intercourse would not be allowed when Sister testified before the jury. The Court of Appeals found this was error because it made the two acts seem more similar than they actually were. We disagree.

---

5. The Court of Appeals relied on *State v. Tutton,* 354 S.C. 319, 580 S.E.2d 186 (Ct.App.2003), which appears to require a connection beyond a degree of similarity in the details of the crime charged and the bad act evidence. We find this interpretation to be an overly restrictive view of our case law. Requiring a "connection" between the crime charged and the bad act evidence is simply a requirement that the two be factually similar and does not add an additional layer of analysis.

██ We note that the trial court redacted only the last step in a progressive course of abuse. Sister's abuse began with touching of the breasts, digital penetration and oral sex, and then progressed to the point of intercourse. The fact that Victim's abuse was interrupted before it could culminate in intercourse does not diminish the similarity between the progression the abuse took in each case. Moreover, the trial court may properly redact dissimilar particulars of sexual conduct to avoid unfair prejudice to the defendant.

*Rule 403*

██ Once bad act evidence is found admissible under Rule 404(b), the trial court must then conduct the prejudice analysis required by Rule 403, SCRE.[6] The probative value of evidence falling within one of the Rule 404(b) exceptions must substantially outweigh the danger of unfair prejudice to the defendant. *State v. Gillian,* 373 S.C. 601, 646 S.E.2d 872 (2007). Here, the probative value of Sister's testimony as redacted substantially outweighs the danger of unfair prejudice. We conclude the trial court properly admitted the evidence. The decision of the Court of Appeals is

**REVERSED.**

TOAL, C.J., and WALLER, J., concur.

BEATTY, J., concurring in result only.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. In my opinion, our cases holding that evidence of other acts of sexual misconduct is admissible in a trial for criminal sexual conduct with a minor as a "common scheme or plan" under Rule 404(b), SCRE, have, in effect, created an exception to the rule's exclusion of propensity evidence. *Compare, e.g., Vogel v. State,* 315 Md. 458, 554

---

6. Rule 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

A.2d 1231 (Ct.App.1989). We have repeatedly held in non-sexual offense cases that, "the mere presence of similarity only serves to enhance the potential for prejudice," *State v. Tuffour,* 364 S.C. 497, 613 S.E.2d 814 (Ct.App.2005) *vacated on other grounds* 371 S.C. 511, 641 S.E.2d 24 (2007) *internal citations omitted,* yet under the majority's view, similarity is the touchstone of admissibility in child sexual offense cases. In my view, if we are to permit the admission of propensity evidence in these types of cases, then we should propose a new rule of evidence, and encourage public comment. *See e.g.* Rules 413 and 414, Fed.R.Evid.; Rule 404(c), Az. R. Evid. In light of the controversy engendered by these rules in other jurisdictions,[7] I believe that thorough scrutiny is warranted.

---

**7.** I note that The Advisory Committees on Criminal and Civil Rules, except for the Department of Justice representative, the Study Committee, except for the DOJ representative, and the Judicial Conference unanimously urged Congress to reconsider these Rules.