# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Guadalupe Guzman Morales, Appellant.

Appellate Case No. 2017-001796

———————

Appeal From Lancaster County
Roger E. Henderson, Circuit Court Judge

———————

Opinion No. 5814
Heard February 9, 2021 – Filed April 7, 2021

———————

## REVERSED AND REMANDED

———————

Appellate Defender Katherine Haggard Hudgins, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia, for Respondent.

———————

**KONDUROS, J.:** Guadalupe Guzman Morales appealed his convictions for
assault with intent to commit criminal sexual conduct (CSC) with a minor, second
degree; CSC with a minor, second degree; and CSC with a minor, first degree.
This court affirmed his convictions. *State v. Morales*, Op. No. 2020-UP-001 (S.C.
Ct. App. filed Jan. 8, 2020). The supreme court granted certiorari and reversed and
remanded this court's opinion. *State v. Morales*, Op. No. 2020-MO-009 (S.C. Sup.
Ct. filed Sept. 23, 2020). This mandate resulted from the supreme court's opinion,

*State v. Perry*, 430 S.C. 24, 37, 842 S.E.2d 654, 661 (2020), in which it overruled *State v. Wallace*, 384 S.C. 428, 683 S.E.2d 275 (2009), a case that was an integral part of this court's original analysis. Upon reconsideration on remand from the supreme court, we reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Morales was arrested in 2002 for CSC with a minor based on allegations of abusing the victim (Victim) between 1999 and 2000. In 2016, a Lancaster County grand jury indicted Morales.[1] At a pretrial hearing, the State moved to allow Victim's sister (Sister) to testify about prior bad acts by Morales. According to the State's theory, Sister experienced similar abuse as Victim, and Sister's testimony fit the common scheme or plan exception under Rule 404(b), SCRE. Sister testified Morales attempted to have intercourse with her when she was in the third grade; she explained that one night she had difficulty falling asleep and Morales invited her into bed. She recalled that when she got into bed with Morales, he pulled her underpants down and "his penis was touching [her butt]." She also described a couple of prior occasions when Morales put his hands down her pants. She stated the abuse began when she was three years old and occurred on three occasions; she explained the abuse occurred at home when her mother was not there.

Morales objected after Sister's testimony and argued, "We take the position that [Sister's testimony] should not be admissible because . . . it doesn't meet the test of [*Lyle*[2]] number one. And, number two, it is highly prejudicial." The State argued Sister's testimony would not be prejudicial because Morales had the opportunity to cross-examine her and the jury could determine her credibility at trial. The trial court issued a conditional ruling admitting Sister's testimony over Morales's objection.

At trial, Victim explained Morales was not her biological father but she grew up believing he was. She stated Morales began touching her in a sexual manner when

---

[1] Morales moved to quash the indictments based on delay. The circuit court treated this as a motion for a speedy trial and found the case should go forward after considering all the evidence presented. This issue is not appealed.

[2] *State v. Lyle*, 125 S.C. 406, 427, 118 S.E. 803, 811 (1923) (explaining the common plan or scheme exception requires "such a visible connection between the extraneous crimes and the crime charged as will make evidence of one logically tend to prove the other").

she was four years old.  She further described an escalating period of abuse that began with touching and progressed to digital penetration.  According to Victim's account, this period of abuse led to an incident on her eleventh birthday when Morales threatened to withhold her birthday trip to Carowinds if she did not get in bed with him.  She recalled Morales engaging in intercourse with her when she got in the bed.  She also stated the intercourse continued after her eleventh birthday.  She testified Morales abused her at home, in the car, and at the river.  She recalled her mother and siblings were ordinarily out of the house when the abuse occurred.

Prior to Sister's testimony at trial, Morales requested a final ruling on the admissibility of Sister's testimony.  Morales objected to the admission of her testimony, arguing:

> It appears to me that it is becoming a little bit more clear as to where the conspiracy is, if that's what you want to call it; the pattern.  And I think that now I'm seeing a pattern of . . . conspiracy.  But the consortium of witnesses that are saying the same thing for the same reason.  We believe it's vindication.  We believe . . . it's stemming from the grandmother.[3]  But now after hearing [Victim's] testimony it appears to be clear that's what it is.  So we think that the testimony of [Sister] . . . will be improper bolstering of [Victim's] testimony. We think it is improper and should not be allowed.

The trial court denied the motion without hearing from the State and explained: "I do find that the similarities outweigh the dissimilarities and taking their testimony would tend to show a common scheme or plan by Mr. Morales."  Sister testified last for the State.  She testified about the alleged abuse from Morales; her trial testimony was consistent with her pretrial hearing testimony.  Sister also confirmed she grew up believing Morales was her biological father; however, she explained she was unsure if Morales actually was her biological father and had asked him to take a paternity test.

---

[3] At trial, Morales attempted to show Victim's grandmother planted the abuse allegations by pressuring Victim to disclose.  During the grandmother's cross-examination, Morales alleged she was "messed up" and made up the abuse allegations due to her own history of abuse.  He also questioned Sister about her grandmother's role in disclosing the abuse.

Following Sister's testimony, the State rested, and Morales moved for a directed verdict. The trial court denied the motion, and Morales testified in his defense. At the close of trial, the jury found Morales guilty as indicted. The trial court sentenced him to thirty years' imprisonment for CSC with a minor, first degree; ten years' imprisonment to be served consecutively for CSC with a minor, second degree; and ten years' imprisonment to be served concurrently for assault with intent to commit CSC with a minor, second degree. This appeal followed.

**STANDARD OF REVIEW**

"A ruling on the admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs when the trial court's ruling is based on an error of law." *State v. Washington*, 379 S.C. 120, 123-24, 665 S.E.2d 602, 604 (2008) (citation omitted).

**LAW/ANALYSIS**[4]

---

[4] As an initial matter, the State argues Morales's argument is unpreserved because he conceded similarities between the Victim's and Sister's testimonies when he stated:

> It appears to me that it is becoming a little bit more clear as to where the conspiracy is, if that's what you want to call it; the pattern. And I think that now I'm seeing a pattern of . . . conspiracy . . . . So we think that the testimony of [Sister] . . . will be improper bolstering of [Victim's] testimony. We think it is improper and should not be allowed.

The State contends Morales's improper bolstering language is evidence he changed his objection and waived the Rule 404(b) issue. However, the trial court understood Morales was still arguing against the admission of Sister's testimony as prior bad act evidence and ruled, "I do find that the similarities outweigh the dissimilarities and taking their testimony would tend to show a common scheme or plan by Mr. Morales." Consequently, the issue is preserved. *See State v. Hopkins*, 431 S.C. 560, 569, 848 S.E.2d 368, 372 (Ct. App. 2020) ("The failure to raise specific grounds for an objection will not prevent the appellate court from

Morales contends Sister's testimony does not fall within the common scheme or plan exception for the admission of prior bad act evidence.  We agree.

Because this court relied on *Wallace* in originally deciding Morales's appeal, we must now re-examine it under the analytical framework set forth in *Perry*. In *Perry*, the court rejected the test adopted in *Wallace* that determined whether prior bad acts established a common scheme or plan based exclusively on the similarities between the prior acts and the pending charges.  430 S.C. at 35-37, 842 S.E.2d at 660-61.  According to *Perry*'s majority opinion, a similarities-only test abandoned the long-standing "logical connection" test established in the seminal prior bad act case, *Lyle*.  *Id*.

> For the first time in our jurisprudence, contrary to over eighty years of interpretation of Rule 404(b) and its pre-Rules predecessor *Lyle*, the [c]ourt [in *Wallace*] stated, "A close degree of similarity establishes the required connection between the two acts and no further 'connection' must be shown for admissibility."  384 S.C. at 436, 683 S.E.2d at 279. . . .  We find this statement from—and the reasoning and holding in—our opinion in *Wallace* is based on a misunderstanding of Rule 404(b) and our cases interpreting it, particularly the "seminal" case *Lyle*.  The decision in *Wallace* effectively created a new rule of evidence, and rendered meaningless the restrictive application of the common scheme or plan exception that is so deeply embedded in our precedent.  . . . We now overrule *Wallace*.

*Id*. (footnotes omitted).

The *Perry* court instructed that the proper question for determining whether prior bad act evidence is admissible to prove common scheme or plan under Rule 404(b) is whether there is a "logical connection."  *Id*. at 44, 842 S.E.2d at 664-65.  In explaining this connection, the *Perry* court offered the example of *State v.*

---

addressing an issue when the record indicates that the trial court and the State understood the basis for the objection." (quoting *State v. Bowers*, 428 S.C. 21, 29, 832 S.E.2d 623, 627 (Ct. App. 2019))).

*McClellan*, 283 S.C. 389, 323 S.E.2d 772 (1984).  *Perry*, 430 S.C. at 41, 842 S.E.2d at 663.

The common scheme or plan exception demands more. There must be something in the defendant's criminal process that logically connects the "other crimes" to the crime charged.  For example, in *McClellan*, we upheld the admission into evidence of other crimes under the common scheme or plan exception because the State proved the defendant used the same particularly unique method of committing two uncharged crimes that he used to commit the charged crime.  We explained,

> All three daughters testified concerning the pattern of this and prior attacks.  According to them, these attacks commenced about their twelfth birthday, at which time Appellant began entering their bedroom late at night, waking them, and taking one of them to his bedroom.  There he would explain the Biblical verse that children are to "Honor thy Father," and would also indicate he was teaching them how to be with their husbands.  The method of attack was common to all three daughters.
>
> [*McClellan*,] 283 S.C. at 391, 323 S.E.2d at 773.

The defendant in *McClellan* developed a particularized plan for sexually assaulting his children through which he invoked the Bible, placed a duty on the children to "honor" him, and placed himself in the role of "teaching" them to submit to sexual violence.  The fact he carried out his plan in its unique detail when assaulting all three children warranted the admission of the uncharged crimes into evidence.  The evidence had a logical connection to whether a crime was committed and to who committed it.  We emphasize today that *McClellan*

represents the proper application of Rule 404(b) and remains good law.

*Id.* at 41-42, 842 S.E.2d at 663-64.

The supreme court decided two other cases the same day it issued the *Perry* opinion and employed its clarified analytical framework to affirm in both instances. *Perry* discusses these two cases—*State v. Durant*, 430 S.C. 98, 844 S.E.2d 49 (2020), and *State v. Cotton*, 430 S.C. 112, 844 S.E.2d 56 (2020)—as examples of how courts should apply the "logical connection" analysis.

> In *Durant*, the defendant was charged with CSC in the second degree for sexually assaulting a young girl at the church where the defendant served as pastor. The State offered into evidence the testimony of three other girls the defendant sexually assaulted as evidence of a common scheme or plan. We affirmed the trial court's admission of the "other crimes" because the defendant used a "particularly unique method of committing his attacks" and that method was "common to all the girls." We noted there were differences between the crimes, but relying on our opinion in this case, refused to engage in a "mathematical exercise where the number of similarities and dissimilarities are counted." Rather, we relied on the fact "the method of his attack was more than just similar," it was unique, and because of its uniqueness" 'reasonably tended to prove a material fact in issue.'" *Durant*, 430 S.C. at 105, 844 S.E.2d at 52 (quoting *Lyle*, 125 S.C. at 417, 118 S.E. at 807). As to the particular facts supporting the use of the common scheme or plan exception, we explained,
>
> > Durant exercised his position of trust, authority, and spiritual leadership to hold private prayer meetings with teen girls who had grown up in his church. He told them he was praying for their health and good fortune, and represented that part of this process was touching them sexually and

> having intercourse. Durant then warned the
> girls of misfortune if they refused or told
> anyone. Moreover, he used scripture as a
> means of grooming the children into
> performing sex acts . . . . Indeed, the trial
> court noted it was one of the more
> compelling cases of common scheme or plan
> evidence it has ever seen.
>
> *Durant*, 430 S.C. at 106, 844 S.E.2d at 53.

*Perry*, 430 S.C. at 42-43, 842 S.E.2d at 664 (omission by court).

The second case applying the resuscitated "logical connection" test was *Cotton*. In that case, the State offered into evidence the testimony of another victim who had been kidnapped and sexually assaulted by the defendant seven months earlier. *Perry*, at 43, 842 S.E.2d 654, 664. The court found the incidents were "remarkably similar" and had "extensive" similarities.[5] *Id*. Additionally, because Cotton claimed he was not with the victim and that DNA evidence on her jeans belonged to someone else, Cotton's identity was a disputed fact in issue to which the prior victim's testimony was logically relevant. *Id*. at 43 n.9, 842 S.E.2d at 664 n.9.

With all these cases in mind, we now return to Morales's case. The manner in which the abuse began was similar for both girls. Victim and Sister testified the abuse began with sexual touching at around the same age. Morales was a father-figure to both girls. The abusive events as to Sister occurred when her mother was not present in the home. Some of Victim's abuse occurred in the home when mother was absent but other abusive episodes occurred outside the home. It is impossible to predict what would have occurred had Morales's alleged abuse of Sister continued, and we cannot speculate. Overall, in keeping with the analysis employed in *McClellan*, *Durant*, and *Cotton*, we conclude the prior bad act evidence in this case was not sufficiently logically connected to the indicted

---

[5] In *Cotton*, both victims met the defendant online. *Cotton*, 430 S.C. at 113-14, 844 S.E.2d at 57. He picked them up for a date, forced them both to perform oral sex, drove each to a secluded location, and raped them. *Id*. Additionally, each victim attempted to dissuade Cotton from raping them with a fabricated story and he indicated he would simply "fix" the fictitious problems by putting on a condom. *Id*. at 114, 844 S.E.2d at 57.

conduct such that proof of one tended to prove the other.  Rather, the prior bad act evidence veered more into the inadmissible propensity evidence cautioned against by precedent and Rule 404(b).  Based on all of the foregoing, Morales's convictions are

**REVERSED AND REMANDED.**

**LOCKEMY, C.J. and HILL, J., concur.**