# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Michael James Dinkins, Appellant.

Appellate Case No. 2017-002360

-------

Appeal From Clarendon County
Michael G. Nettles, Circuit Court Judge

-------

Opinion No. 5883
Heard September 23, 2020 – Filed December 22, 2021

-------

## AFFIRMED

-------

Steven Smith McKenzie, of Coffey & McKenzie, PA, of
Manning, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, both of
Columbia, and Solicitor Ernest Adolphus Finney, III, of
Sumter; all for Respondent.

-------

**MCDONALD, J.:** Michael James Dinkins appeals his convictions for second-
degree assault and battery and criminal sexual conduct (CSC) with a minor in the
third degree, arguing the circuit court erred in: (1) failing to direct a verdict on one
count of third-degree CSC with a minor when the State failed to produce evidence
of intent; (2) charging the jury that assault and battery is a lesser included offense
of third-degree CSC with a minor due to the circuit court's lack of subject matter
jurisdiction; and (3) admitting evidence of prior bad acts.  We affirm.

**Facts and Procedural History**

In 2012, the family court awarded custody of Child, who was then eight years old, to her maternal aunt (Aunt) and Aunt's husband, Dinkins.[1] Initially, Child lived with her maternal grandmother (Grandmother) during the week because Aunt worked long hours at a hospital; Child visited Aunt's home on the weekends and on Aunt's days off from work.

In 2013, Child, Aunt, Dinkins, and Grandmother took a trip to Topsail Island, North Carolina. According to Child, when she and Dinkins were alone in the living room, Dinkins rubbed her leg and touched her "very close to [her] private area." Child did not immediately disclose this incident to anyone, but eventually told Grandmother. Grandmother responded that they "needed to just watch things all more, very carefully" to see if anything else happened before telling Aunt. Dinkins had been drinking heavily that day, and Grandmother believed alcohol might have contributed to his behavior.

Approximately a year and a half after her mother's death—from December 2013 through February 2014—Child saw counselor Sarah McClam for grief treatment. In August 2014, Child began living full time with Aunt and Dinkins. Child's counseling with McClam resumed in May 2015, after Child wrote a concerning letter to her deceased mother. This treatment period continued until August 2015, when Child improved. Child did not report concerns about Dinkins during the 2013–14 treatment period or when she resumed treatment in 2015.

On December 31, 2015, Child (then eleven years old) and Dinkins stayed up late one night to watch movies, and Child fell asleep on the living room couch. At trial, Child testified Dinkins kissed her on the lips and put his tongue in her mouth. Child pretended to be sleeping because she was scared and went to find Grandmother after Dinkins left the living room. When Aunt came back inside the house later that night, Child told her Dinkins had kissed her on the couch. Child explained she disclosed this incident because "she knew that it was really wrong and [she] didn't need to let it go on anymore."

Aunt and Grandmother did not report the couch incident to law enforcement but contacted McClam to schedule an emergency appointment for Child to talk with her about what happened. When Child and Aunt met with McClam in January

---

[1] Child's mother died in July 2012. Although her father is active in her life, he suffers from a health condition that renders him unable to drive and care for Child.

2016, Child disclosed the December 31 incident and reported that Dinkins had been previously inappropriate toward her on October 27, 2015, (Child's eleventh birthday) and December 26, 2015.

Child clarified that on October 27, 2015, Dinkins climbed into bed with her, and "pushed up his pelvic area up and down on top" of her. She further alleged that later that day, she was on the couch when Dinkins grabbed her hand and made her feel something "wet" and "spongy" in the middle of his body "where his private area was." Child claimed she did not immediately report the incident to anyone because she knew her aunt was happy, and she did not want her aunt "to have to get a divorce from my uncle." Child also disclosed that on December 26, 2015, Dinkins made her sit in his lap, and then put his hands under her shirt and touched her breasts over her bra for several minutes. Again, she did not immediately tell anyone because she was afraid Aunt and Dinkins would divorce and she wanted Aunt to be happy. Aunt stated this was the first time she learned of these prior incidents.

After the January 2016 session with Aunt and Child, McClam notified the South Carolina Department of Social Services and the Clarendon County Sheriff's Office (CCSO) of Child's disclosures. CCSO Investigator Kimberly Marlow then spoke with Grandmother, Aunt, and Child's father about the allegations. During Investigator Marlow's interview with Dinkins, Dinkins claimed he kissed Child on the forehead and then kissed his fingers and touched them to Child's mouth. Investigator Marlow testified Dinkins's story changed several times during the interview.

In August 2017, a Clarendon County grand jury indicted Dinkins on four counts of third-degree CSC with a minor: two counts from October 27, 2015, one count from December 26, 2015, and one count from December 31, 2015.

Pretrial, the State filed a written motion seeking to admit the following as evidence of other crimes, wrongs, or acts under Rule 404(b), SCRE:

> 1. During spring break of 2013, the defendant reached under the victim's nightgown and touched the victim on her vaginal area. The victim did not tell anyone until . . . several months later when she told her grandmother. Grandmother spoke with the victim's aunt who in turn told the defendant that this behavior was inappropriate and made victim uncomfortable.

2.  Between 2013 and 2015 the defendant kissed victim on the back of her neck.  This incident was witnessed by the victim's aunt who confronted the defendant [and] informed him that his behavior was inappropriate and made victim uncomfortable.  She asked the defendant to refrain from such behavior.

3.  Between 2013 and 2015 the defendant touched victim's legs and thighs making victim uncomfortable.

4.  Between 2013 and 2015 the Defendant showed the victim pictures of models from Victoria Secret catalog.  He told the victim that this was how he wanted the victim to look when she grew up.

5. Between 2013 and 2015 the defendant offered to buy victim [a] revealing bathing suit.

6.  Around 2014 the defendant touched victim's leg under the table.  This incident was witnessed by victim's grandmother who notified victim's aunt.  Aunt told the defendant that this type of behavior made victim uncomfortable.

7.  On or about December 26, 2015 the Defendant sen[t] the victim the text message "LUKUAMU," which stands for "Love You, Kiss You, Already Miss You."  He also sent the victim a message "You're the bomb.com."

The State argued evidence of these incidents was admissible to show a common scheme or plan under Rule 404(b) because the incidents all involved Child and occurred within a two-year period.  The State further explained it sought to introduce "those prior bad acts to show that there was nothing innocent.  He was told on prior occasions do not touch the victim in that manner, it makes her uncomfortable, it's inappropriate, and yet he continued to do it."  The State noted the incidents were evidence of Dinkins's intent, an element necessary to establish third-degree CSC with a minor.

After taking testimony from Aunt and Child, the circuit court found two of the seven prior incidents—the 2013 spring break incident and the neck kissing incident—were admissible under Rule 404(b), stating, "For purposes of—of the prior bad acts, I've taken into consideration the *Wallace* factors."[2]  "[T]he location of the abuse all took place in the home, with the exception of the Topsail incident in the mountains at spring break, and that was obviously within the family confines."

At trial, Child testified that the first time Dinkins inappropriately touched her was on a spring break trip to Topsail Island in 2013.  She and Dinkins were alone in the living room and sitting on the couch watching television when he put his hand on her upper thigh.  Child reported the incident to Grandmother later that night.  Child also recalled Dinkins kissing her on the neck at their home in Manning but could not remember exactly when this happened.  Aunt testified she witnessed Dinkins kiss Child on the neck in 2014 in the hallway at their house.  Dinkins did not know she could see him, and he walked up behind Child, pulled her hair back, and "tenderly laid his lips on her."  Aunt explained, "It wasn't like a quick smack.  It was like a, like a tender, not a kiss between parent and child."

The jury convicted Dinkins of second-degree assault and battery on count one of the indictment (Child's allegation that Dinkins got into bed with her and climbed on top of her) and count four (Child's allegation that Dinkins reached his hand under her shirt and touched her breasts).  The jury acquitted Dinkins on count two (Child's allegation that Dinkins took her hand and forced her to touch his genitals).  The jury convicted Dinkins of third-degree CSC with a minor on count three of the indictment (Child's allegation that Dinkins kissed her and put his tongue in her mouth).  The circuit court sentenced Dinkins concurrently to six years' imprisonment suspended upon the service of three years' imprisonment and three years' probation for third-degree CSC with a minor, and three years' imprisonment for assault and battery.

During post-trial motions, Dinkins argued "French kissing" did not fall within the third-degree CSC with a minor statute, the circuit court lacked subject matter jurisdiction to charge second-degree assault and battery as a lesser included offense of third-degree CSC with a minor, and the circuit court erred in admitting evidence of prior bad acts. The circuit court denied the post-trial motions.

---

[2]  *See State v. Wallace*, 384 S.C. 428, 683 S.E.2d 275 (2009), *overruled by State v. Perry*, 430 S.C. 24, 30, 842 S.E.2d 654, 657 (2020).  At the time of Dinkins's trial, our supreme court had not yet decided *Perry*.

**Standard of Review**

"On appeal from the denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Bennett*, 415 S.C. 232, 235, 781 S.E.2d 352, 353 (2016) (quoting *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014)). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." *State v. Harris*, 413 S.C. 454, 457, 776 S.E.2d 365, 366 (2015) (quoting *State v. Brandt*, 393 S.C. 526, 542, 713 S.E.2d 591, 599 (2011)).

"The trial judge has considerable latitude in ruling on the admissibility of evidence and his decision should not be disturbed absent prejudicial abuse of discretion." *State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Kirton*, 381 S.C. 7, 23, 671 S.E.2d 107, 115 (Ct. App. 2008) (quoting *State v. Irick*, 344 S.C. 460, 463, 545 S.E.2d 282, 284 (2001)).

**Law and Analysis**

**I.  Directed Verdict**

Dinkins argues the circuit court erred in failing to direct a verdict on the third count of the indictment, which alleged Dinkins "French kissed" Child. Specifically, Dinkins contends the State failed to present evidence of his intent to arouse, appeal to, or gratify the lust, passions, or desires of either himself or Child as required under section 16-3-655 of the South Carolina Code (2015). We disagree.

"When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." *State v. Prather*, 429 S.C. 583, 608, 840 S.E.2d 551, 564 (2020) (quoting *State v. Hernandez*, 382 S.C. 620, 624, 677 S.E.2d 603, 605 (2009)). "We must affirm the trial court's decision to submit the case to the jury if there is any direct or substantial circumstantial evidence reasonably tending to prove the defendant's guilt." *Id*.

Section 16-3-655(C) provides:

> A person is guilty of criminal sexual conduct with a
> minor in the third degree if the actor is over fourteen

years of age and the actor wilfully and lewdly commits or
attempts to commit a lewd or lascivious act upon or with
the body, or its parts, of a child under sixteen years of
age, with the intent of arousing, appealing to, or
gratifying the lust, passions, or sexual desires of the actor
or the child.

At trial, Child testified she and Dinkins stayed up late to watch movies on December 31, 2015, and Dinkins kissed her on the lips and put his tongue in her mouth while she was asleep on the couch. When Dinkins left the room, Child went to Grandmother's room and started pacing. Child then reported the incident to Aunt.

Grandmother testified that when Child woke her up, she was visibly upset and looking for Aunt. Aunt testified Child was crying and scared when she told her Dinkins kissed her and put his tongue in her mouth. Aunt confronted Dinkins, who denied this, claiming he kissed his fingers and then touched them to Child's forehead and mouth. Aunt did not believe Dinkins's explanation, so she told Grandmother and Child they were leaving. Aunt testified Dinkins did not deny kissing Child but claimed "he was just trying to show her affection."

Psychologist Elizabeth Ralston was qualified without objection as an expert in child abuse dynamics and disclosure. Ralston did not meet with or treat Child; as a blind expert, her only knowledge of the case was provided by the State. Ralston discussed delayed disclosure, the reasons a child might delay disclosing abuse, partial disclosure, and the characteristics and symptoms a sexually abused child might exhibit. Ralston acknowledged the symptoms of a sexually abused child could overlap with those of a child who suffered the loss of a parent.

At the close of the State's case, Dinkins moved for a directed verdict on all counts, arguing the State did not present the necessary evidence "about the intent of arousing, appealing to, or gratifying the lust or passion of the sexual desires of the actor in any of the indictment[s]." The circuit court denied the motion, noting the question of intent would be a question of fact for the jury.

We find the circuit court properly denied Dinkins's directed verdict motion because, viewing the evidence in the light most favorable to the State, the State presented evidence necessary to satisfy the elements of third-degree CSC with a minor. Specifically, Child's testimony that Dinkins put his tongue in her mouth while she pretended to be asleep was evidence of conduct from which a jury could

reasonably determine Dinkins's intent to arouse, appeal to, or gratify his own lust, passions, or sexual desires. *See* § 16-3-655(C); *State v. Meggett*, 398 S.C. 516, 527, 728 S.E.2d 492, 498 (Ct. App. 2012) ("[W]hether a defendant possessed the requisite intent at the time the crime was committed is typically a question for jury determination because, without a statement of intent by the defendant, proof of intent must be determined by inferences from conduct.").

## II. Subject Matter Jurisdiction of Lesser Included Offense

Dinkins next argues the circuit court lacked subject matter jurisdiction to charge second-degree assault and battery as a lesser included offense of third-degree CSC with a minor. We disagree.

"Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *Gantt v. Selph*, 423 S.C. 333, 337, 814 S.E.2d 523, 525 (2018) (quoting *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994)). "[A] defendant may for the first time on appeal raise the issue of the trial court's jurisdiction to try the class of case of which the defendant was convicted." *State v. Gentry*, 363 S.C. 93, 101–02, 610 S.E.2d 494, 499 (2005). "The lack of subject matter jurisdiction may not be waived, even by consent of the parties, and should be taken notice of by this Court." *Id.* at 100, 610 S.E.2d at 498.

As an initial matter, we find the circuit court had subject matter jurisdiction over the criminal offenses of which Dinkins was convicted. *See id.* at 101, 610 S.E.2d at 499 ("Circuit courts obviously have subject matter jurisdiction to try criminal matters."). Whether the circuit court erred in charging the jury with second-degree assault and battery as a lesser included (or lesser-related) offense of criminal sexual conduct does not constitute a question of subject matter jurisdiction.[3] *See*

---

[3] In *State v. Hernandez*, our supreme court found assault and battery of a high and aggravated nature was no longer considered a lesser included offense of CSC after the 2010 codification of the assault and battery crimes because the statute specifies the crimes of which the varying degrees of assault and battery are lesser included offenses, and CSC is not included. 428 S.C. 257, 260–61, 834 S.E.2d 462, 463–64 (2019) (per curiam). Section 16-3-600(D)(3) of the South Carolina Code (2015) provides, "Assault and battery in the second degree is a lesser-included offense of assault and battery in the first degree, as defined in subsection (C)(1), assault and battery of a high and aggravated nature [ABHAN], as defined in subsection (B)(1), and attempted murder, as defined in Section 16-3-29."

*id.* (clarifying the subject matter jurisdiction of the court and the sufficiency of an indictment "are two distinct concepts").

Prior to charging the jury, the circuit court asked, "There's been some discussion about the lesser included charge of assault and battery first degree or some other lesser included offense. What is the Defendant's position on that?" Dinkins responded that assault and battery second degree would be "akin to ABHAN," which was formerly recognized as a lesser included offense of CSC prior to the Legislature's codification of the assault and battery offenses.

At the close of the State's case, the circuit court advised,

> [T]here's been some discussion yesterday and today about the lesser included offenses. And you know, and I asked y'all to take a look at it and we would discuss it this morning. We discussed it briefly in chambers this morning, and I think there was a consensus that perhaps lesser included offenses should be charged on count one and count four. Upon my review of the law, I have some questions and I'd ask for your input . . . because the law is sort of unclear in this area and I really want to hear what both of you have to say in this regard.

The circuit court discussed whether first-degree or second-degree assault and battery would be the appropriate charge, and both the State and Dinkins's counsel agreed second-degree would be appropriate because it includes an attempt to injure.

> THE COURT: All right. And my question to you is, do you want me to charge that?
>
> [COUNSEL]: I need to discuss that with my client. I'd love to discuss it over the break.
>
> THE COURT: There's no time like the present. We're gonna sit right here and let you do it.
>
> [COUNSEL]: Okay.

(Pause)

> [COUNSEL]: Your Honor, after conferring with my
> client, he would ask the Court to charge A&B second.

Dinkins requested that the circuit court charge the jury with second-degree assault and battery. Thus, he waived his challenge to the propriety of the charge on appeal. *See State v. Parris*, 387 S.C. 460, 465, 692 S.E.2d 207, 209 (Ct. App. 2010) ("When the defendant receives the relief requested from the trial court, there is no issue for the appellate court to decide."); *cf. State v. Dickerson*, 395 S.C. 101, 120 n.6, 716 S.E.2d 895, 906 n.6 (2011) (finding "a defendant's ability to waive notice of a particular charge does not also grant him an unqualified, non-reciprocal right to request any charge supported by the evidence, for to do so would grant him an unfair tactical advantage that interferes with the State's prerogative of deciding on which charges to try a defendant").

## III. Prior Bad Acts

Finally, Dinkins argues the circuit court erred in admitting evidence of prior bad acts committed against Child. We disagree.

Rule 404(b), of the South Carolina Rules of Evidence, provides:

> Evidence of other crimes, wrongs, or acts is not
> admissible to prove the character of a person in order to
> show action in conformity therewith. It may, however, be
> admissible to show motive, identity, the existence of a
> common scheme or plan, the absence of mistake or
> accident, or intent.

"Rule 404(b) prevents the State from introducing evidence of a defendant's other crimes for the purpose of proving his propensity to commit the crime for which he is currently on trial." *Perry*, 430 S.C. at 30, 842 S.E.2d at 657.

> When evidence of other crimes is admitted based *solely*
> on the similarity of a previous crime, the evidence serves
> only the purpose prohibited by Rule 404(b), and allows
> the jury to convict the defendant on the improper

> inference of propensity that because he did it before, he
> must have done it again.

*Id.* at 41, 842 S.E.2d at 663 (emphasis added).

Our supreme court addressed other crimes evidence admitted to show a common scheme or plan under Rule 404(b), SCRE, in *Perry*, 430 S.C. at 34, 842 S.E.2d at 659.  There, the court analyzed the chronology of South Carolina's case law regarding the admission of other crimes, noting that for eighty years South Carolina courts required "a logical relevancy or connection between the other crime and some disputed fact or element of the crime charged" in order to admit prior bad acts evidence under *State v. Lyle*.[4]  *Id.* at 31, 842 S.E.2d at 658.  Then, in 2009, *Wallace*[5] appeared to abandon the logical connection test and "effectively created a new rule of evidence, and rendered meaningless the restrictive application of the common scheme or plan exception that is so deeply embedded in our precedent." *Id.* at 34–37, 842 S.E.2d at 659–61 (footnote omitted).  Thus, the *Perry* court overruled *Wallace*, reiterating that the test for determining whether evidence of other crimes is admissible is the *Lyle* logical connection test.  *Id.* at 44, 842 S.E.2d at 665.

Based on its clarification of the law, the supreme court held evidence that Perry sexually assaulted his stepdaughter more than twenty years prior to his trial for sexual offenses against his biological daughters was inadmissible to show a common scheme or plan because the evidence demonstrated nothing beyond the defendant's propensity to commit the subsequent crimes.  *Id.*  The supreme court found the State failed to meet the burden necessary to admit the prior bad acts under the logical connection test because it "did not identify any fact in the crimes charged that was made more or less likely to be true" by the stepdaughter's testimony.  *Id*. at 40, 44, 842 S.E.2d at 663, 665.  The *Perry* court reiterated, "The State must demonstrate to the trial court that there is in fact a scheme or plan common to both crimes, and that evidence of the other crime serves some purpose other than using the defendant's character to show his propensity to commit the crime charged." *Id.* at 44, 842 S.E.2d at 665.  "The State must show a logical connection between the other crime and the crime charged such that the evidence of other crimes 'reasonably tends to prove a material fact in issue.'"  *Id.* (quoting

---

[4] 125 S.C. 406, 118 S.E. 803 (1923).

[5] 384 S.C. at 428, 683 S.E.2d at 275.

*Lyle*, 125 S.C. at 417, 118 S.E.2d at 807). "Whether the State has met its burden 'should be subjected by the courts to rigid scrutiny,' considering the individual facts of and circumstances of each case." *Id.* (quoting *Lyle*, 125 S.C. at 417, 118 S.E. at 807).

The Rule 404(b) evidence offered here differs from that erroneously admitted in *Perry* because *Perry* addressed evidence of remote conduct against a separate victim, whereas this case involves Dinkins's repeated inappropriate conduct towards *this* child over the course of three years. The circuit court carefully considered the seven acts offered by the State, admitting evidence of only two of the seven. We find the prior acts probative as to a pattern of grooming—they are evidence of Dinkins's motive and intent, and these prior acts counter the argument that Dinkins's actions toward Child were innocent and properly familial. *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."); *Perry*, 430 S.C. at 72, 842 S.E.2d at 679–80 (Kittredge, J., dissenting) ("[T]he hallmark of the common scheme or plan exception is that the charged and uncharged crimes are connected in the mind of the actor by some common purpose or motive. Thus, as with the *modus operandi* exception where identity is interwoven with common scheme or plan, motive can also be inextricably intertwined with a common scheme or plan."). The charged and uncharged acts here are logically connected within the pattern of grooming, which included an escalation of the conduct towards this child. *See, e.g.*, *Clasby*, 385 S.C. at 157, 682 S.E.2d at 897 ("[E]vidence that defendant began touching and committing other sexual misconduct with victim when she was six or seven years old was admissible to show common scheme or plan during trial for the indicted offense of CSC with a minor, second degree[,] on the ground that the 'six to seven year pattern of escalating abuse of Victim by [defendant was] the essence of grooming and continuous illicit activity.'" (second alteration in original) (quoting *Kirton*, 381 S.C. at 36, 671 S.E.2d at 121–22)).

The State is required to prove intent as an element of third-degree CSC with a minor. *See* § 16-3-655(C) ("A person is guilty of criminal sexual conduct with a minor in the third degree if the actor is over fourteen years of age and the actor wilfully and lewdly commits or attempts to commit a lewd or lascivious act upon or with the body, or its parts, of a child under sixteen years of age, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the actor or the child."). As Dinkins's prior acts against Child were probative of his

intent toward and grooming of Child, the circuit court did not abuse its discretion in admitting evidence of two of the seven instances the State sought to admit under Rule 404(b), SCRE.

**Conclusion**

Based on the foregoing, Dinkins's convictions are

**AFFIRMED.**

**LOCKEMY, C.J., and KONDUROS, J., concur.**